**STATE OF OHIO, Plaintiff-Appellee v. RICHARDSON, Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 1753. Decided June 11, 1943.

John J. Froug, Dayton, for defendant-appellant.

Nicholas Nolan, prosecuting attorney, Dayton, Sam D. Kelly, Dayton, and C. D. Magsig, Dayton, asst., prosecutors, for plaintiff-appellee.

610

## OPINION

By GEIGER, J.

This matter is before this court on appeal by Wade Richardson from a judgment of the Court of Common Pleas sentencing him to life imprisonment in the penitentiary of Ohio upon conviction of murder in the first degree with recommendation of mercy.

An indictment was returned by the grand jury of Montgomery county, presenting that, Hiram Richardson, Tom Richardson, Wade Richardson and Gentry Richardson on or about the 18th day of July, 1942, in Montgomery county, while in the perpetration of a robbery, killed Everett DeWeese. The case was submitted to the jury, which found all four defendants guilty with recommendation of mercy.

The four defendants were brothers coming into Ohio from Kentucky; only Wade has prosecuted error to this court, the other three not appealing from the judgment of the court sentencing them to the penitentiary for life. In his assignment of errors, Wade asserts thirteen different grounds. We will not recite them all in detail, as many are the usual assignments of error made upon appeal. We, however, will examine those upon which defendant particularly relies.

While defendant-appellant has submitted to the court a long list of errors, his argument to the court was narrowly confined. The first claimed prejudicial error is the refusal of the court to grant a change of venue upon the motion of the defendant. Counsel point out at length that the crime with which the defendant was charged was unusual, in that it was the first time within the records of Ohio criminal procedure that four brothers had been charged with the offense of murder in the first degree. Counsel point out that the newspapers of Montgomery county, Ohio, made special and continuous reference to the crime and also charged in the news items that the four defendants were guilty; that they had had a long career of crime and several of them had been convicted and sentenced in Kentucky for criminal offenses. Putting it briefly, defendant's counsel urged that inasmuch as the newspapers had given publicity not only to the incident of the crime, but to the claim that the defendants were guilty, it was impossible for the defendant to secure a fair trial in Montgomery county.

Counsel also points out that in the course of newspaper publicity, photographs of the defendants had been frequently taken

and that witnesses who testified as to their identity did so after having had the opportunity to examine the photographs and after the county officials had taken the defendants to the place of the crime and had placed them in the position claimed to have been occupied by them in reference to the building where the crime was committed.

The court is of the opinion that the fact that a sensational crime had been committed under circumstances which made newspaper publicity inevitable, is no reason why the defendant should have a change of venue.

The prospective jurors on their voir dire examination each declared that she would not be influenced by any newspaper accounts and most of them stated they had not read the narration of the crime as it appeared in the papers. The record does not disclose whether the defendants ever exhausted their preemptory challenges of the prospective jurors, but it does appear that the jurors were carefully examined and no objection lodged against the qualification of any member of the jury and there is no matter now urged that would call our attention to any disqualification of the jurors, except the general one that the public in Montgomery county was so aroused and incensed by the newspaper accounts of the tragedy and the assertion of the guilt of the defendants, that they could not secure a fair trial in this county. Should we make a ruling that newspaper publicity would require a change of venue, then in many cases, the heinousness of the offense and its consequent publicity would prevent a trial of the defendant in the county where the offense was committed. This cannot be justified and we overrule this alleged ground of error.

The next matter urged with great earnestness by counsel for defendant is that the court erred in denying the defendant a separate trial. This court had occasion to pass upon the right of a defendant in a first degree murder case to a separate trial rather than to a trial with co-defendants. The matter is discussed at length in **State of Ohio, Plaintiff-Appellee v. Harry Dingledine, Defendant-Appellant, 14 OO 339.** This case arose in Clark county and involved three alleged murderers. This court there held that the trial court committed no error in requiring them, upon the motion of the prosecuting attorney, to be jointly tried and the Supreme Court refused to review this holding. This court held in that case:

"The right granted by **§13443-3 GC**, to one or two or more persons jointly indicted for a capital offense to have a separate trial is a right which may be overcome only for good cause shown, the burden of showing the same being upon the state.

Because the trial court rules against the defendant on his application for a separate trial is in itself no indication that there has been an abuse of discretion; such abuse must be affirmatively shown."

The court in its opinion states in substance that as to non-capital cases the provision is that those jointly indicted shall be tried jointly unless the court, for good cause shown either by the prosecuting attorney or one or more of the defendants orders that one or more of the defendants be tried separately. The court is vested with the discretion, for good cause shown, to grant separate trials, but whether such good cause has been shown, is left to the judgment of the court. In capital cases, it is provided that when two or more are jointly indicted for a capital offense, each shall be tried separately unless the court, for good cause order said defendants to be tried jointly.

In the case at bar, the prosecuting attorney, to support his motion for a joint trial asserted four grounds and counsel for defendant-appellant made the record clear that there were no other grounds considered by the court than those asserted by the prosecuting attorney in support of his motion.

The court below, in this case, in passing upon the motion, considered only such matters as were brought to his attention at the hearing in support of the prosecuting attorney's application for a joint trial.

The first ground asserted by the prosecuting attorney was that all of the defendants acted in concert in the commission of the crime. The second ground was that the jury in a joint trial would be better able to weigh the testimony and would thereby be in better position to render justice.

The third ground is that a separate trial would require so much time that others now confined in the Montgomery county jail would be denied a speedy trial. The fourth ground is to the effect that separate trials would result in unnecessary expense to the county. We passed on similar matters presented in the Dingledine case, and held there that the defendant, if he is otherwise entitled to a sparate trial, should not be denied the same because his trial would require so much time that others confined in the jail would be denied a speedy trial. We said in that case that the defendant was not responsible for the condition that was asserted as one requiring him to submit to a joint trial. We also in that case held to the effect that a defendant who is entitled to a separate trial, should not be denied the same because of the extra expense to the county. A person on trial for first degree murder is more concerned in securing a favorable trial than he is in saving money to the county and properly so. We, however, find merit in the first and second

grounds asserted by the prosecuting attorney, to the effect that a joint trial of all the defendants would enable the jury to have a clearer insight into the testimony and enable it to arrive more intelligently at a proper conclusion.

We come to the conclusion that a court which necessarily has wide grasp of the incident relating to any joint capital offense, will exercise its judgment fairly and impartially so that the defendant may not suffer from the requirement that he be tried jointly with other co-defendants jointly indicted. If there was any error on the part of the court in denying the defendant, Wade Richardson, a separate trial, it was cured upon the factual developments in the case. As the case developed, it was so essentially one of joint action and the connecting facts were so related that it was highly proper that all of the defendants be tried together. If there was any prejudice whatever in the action of the court originally, it was removed when the evidence was developed.

The next matter that is insisted upon by counsel for defendant-appellant is that there is utter failure on the part of the State in proving that his client participated or was in any way connected with the incident that lead to the murder. Counsel states his position as follows:

"The only evidence in the record which ties up the defendant with the crime, is the evidence of a Mrs. Bernice Meyers, which begins on page 23 and ends on page 44 of the record. There is nothing in the record except this testimony which identifies the defendant at the scene of the crime."

Counsel for the State replies to this assertion of counsel for defendant, as follows:

"At the outset let us make ourselves perfectly clear. Throughout this trial the state never claimed and does not now contend that Mrs. Bernice Meyers is positive in her identification of Wade Richardson, but we do submit that there is an abundance of other testimony which proves beyond a reasonable doubt that Wade Richardson was the driver of the car and that he aided and abetted his three brothers in the commission of the robbery and murder."

Counsel for the state calls attention to the testimony of Paul Roughton, Record page 294, et seq., in which that witness testified in substance that at about three o'clock on the morning of the murder, Tom and Gentry came to a cabin on Bear Creek and woke him up. He went outside with them and found there three shot guns. They told him to hurry up and get dressed and come outside

to help them push Wade's car. After getting this car started Gentry drove away and in about fifteen minutes returned with Wade and Hiram.

The record discloses conclusively that the three brothers of Wade were the joint perpetrators of the robbery and that one or possibly two of them fired the shots that first wounded the deceased, and then other shots that killed him instantly. The evidence touching the matters preliminary to the shooting, related largely to the robbery and there was no direct evidence that Wade was present with his three brothers who were clearly identified as actively participating. The other evidence that refers incidentally to the presence of Wade was that during the course of the robbery, there was a suppressed tooting of the horn of an automobile parked near to the cafe. Mrs. Meyers, who lives next door to the cafe, testified that her attention was called to the fact that a robbery was being perpetrated; that she looked out of the window and saw a parked car, and standing on the running board was a rather tall individual whom she does not positively identify as Wade. At the trial, she makes a rather reserved statement that in her judgment the individual at the automobile was Wade, due to facial peculiarities which she says she recognized as she looked out of the window. Even if the only testimony tending to connect Wade Richardson with the crime was that of Bernice Meyers, it was sufficient to authorize the jury, exercising its prerogatives, to find that the defendant had been identified. Whatever the fact as to Mrs. Meyers' attitude prior to the time that she took the stand the gist of her testimony was that she stood where she could see Wade Richardson. That where he was standing was sufficiently lighted for her to distinguish his features which she described. She on two occasions saw him standing on the running board of the bandit car; that there was but one man about the automobile while the defendants were in the cafe. Finally, she pointed to Wade in the courtroom and said that he answered the description of what she saw. She said that she was not then positive but that if he would stand she might be able to tell more. She then pointed to Wade Richardson. When she got into the courtroom under oath she did identify him. The statement of the prosecutor tending to weaken the effect of her identification does not change the record. In the closing argument Mr. Kelly, assistant prosecutor, insisted that Mrs. Meyers had definitely identified defendant, Wade Richardson.

But there are many other circumstances which tend to establish that Wade Richardson was at the scene of the crime and participated therein. According to Roughton, he was at the hide-out on different occasions prior to the commission of the crime, participated in the secret conferences of the brothers, was present on

the afternoon of the day of the commission of the offense and brought liquor to the hide-out. The defendants were brothers. Wade was the owner of the Chevrolet which he and his brothers used as a means of transportation to and from the cabin. Wade left the hide-out with two of his brothers on the night preceding the morning of the hold-up and, presumably, in the Chevrolet. The stealing of the Knight car is established. This is the car which was used by the bandits in the hold-up. Knight identifies the car immediately ahead of his daughter's stolen car on the road as a Chevrolet. Roughton testifies to the circumstances attending the return of the defendants to the hide-out on the morning of the crime. Wade's Chevrolet was the car in which they rode to the hideout. Wade was present when the guns and the tools were carried away to the second hide-out. He provided supplies and was generally present during the days following the hold-up. He participated in the secret conferences with his brothers. In the face of these facts which tended to link Wade with the commission of the hold-up and to corroborate Mrs. Meyers in her identification, Wade sat silently by and did not take the stand to deny any of this connecting evidence.

The evidence is abundant that these four brothers were engaged in marauding expeditions throughout this section of the state and there is sufficient evidence to permit the jury to conclude that Wade was an active participant in the robbery. Counsel for the defendants agreed that where one spoke on behalf of his particular client, that he spoke on behalf of all the others. Counsel for one made the statement in the opening address to the jury that they would prove that the defendants were not present at the time of the robbery. They have failed to do this, at least as to three of the defendants who were positively identified as participants. The defendants not only did not prove an alibi, but did not introduce a single witness either through themselves or other witnesses as to any transaction concerning which the state introduced evidence.

Counsel specifically urges the error of the trial judge in admitting a plan or drawing which had markings placed thereon. It was not erroneous for the court to permit a composite sketch showing relative locations as there was evidence supporting the sketches made. There was nothing serious about this. The plat which had been marked "murder car, etc." carrying objectionable markings was corrected upon the order of the court before it went to the jury. Upon the whole the submission of the plat as it eventually went in was not objectionable.

The murder in this case was brutal, cruel and ruthless Four young men armed with shot guns visited the place where peaceful citizens were cleaning the cafe after the days business and proceeded

to hold up those in charge by the display of force and threats. After securing the money, they left through the rear door. At that moment the decedent who was present next door, came out of the house with a revolver to protect the victims of the robbery. Upon his being discovered by the robbers, at least two shots were fired from the shot guns loaded with ordinary shot gun pellets Upon receiving the charge from the first shots, Mr. DeWeese fell to the ground, but recovered and came toward the place where the automobile was parked. Thereupon he was met by a fusillade of heavy slugs shot from a shot gun only about six feet away from him. These slugs blew away half of his skull and shattered the rest of it, so that he dropped to the ground dead.

In all our experience as trial judges, we can say that we have never met a case of more brutal murder than presented by the evidence in this case, and we see not the slightest reason for the jury recommending mercy. These robbers and murderers. showed no mercy to their innocent victim, and should have been found guilty of murder in the first degree without the recommendation of mercy.

After reading the record, we are quite convinced of the wisdom of counsel for the three brothers in not asking for a new trial, contenting themselves with the verdict of first degree murder with mercy recommended. If they secured a new trial they would take the chance of appearing before an ordinarily seasoned jury where all members were not women and the brutality of the murder would result in a verdict of murder in the first degree without the recommendation of mercy. As to Wade there might be some chance for acquittal due to lack of identity.

We have gone over all the other errors complained of by counsel for defendant-appellant and find no prejudicial error. Counsel for defendant-appellant complains that the court refused to give charges requested by him before argument. Without discussing this matter at length, we are content to rely upon the case of **Wertenberger v. State of Ohio, 99 Oh St 353,** where it was held:

"Under §13675 GC, the court is authorized but not required at the conclusion of the evidence, upon the request of the State or of the accused, to charge the jury before argument upon a point of law requested and pertinent to the case."

The judgment of the court below affirmed. Cause remanded for proper proceeding.

BARNES, P. J., and HORNBECK, J., concur.