Kinkade, J.
 

 This is a proceeding in error to reverse a judgment of conviction and sentence entered against the plaintiff in error, John H. Koenig, herein referred to as the accused, by the court of common pleas of Mercer county, and affirmed by the Court of Appeals of that district.
 

 The action in the trial court was based upon an indictment returned by the grand jury of Mercer county in January, 1927. The indictment contained eight separate counts. In each count the accused was charged with having issued a check upon a bank named in the check, and payable to a bank named in the check, without at that time having sufficient funds to his credit in the bank upon which the check was drawn, and without having sufficient credit in that bank at that time to insure payment of the check when it reached the bank in the usual course of exchange
 
 ;
 
 and the accused was further charged in the indictment with having so issued the checks with the intent to defraud the payee of the checks.
 

 
 *149
 
 The indictment was returned under and pursuant to Section 710-176, General Code of Ohio, which reads:
 

 “Any person, who, with intent to defraud, shall make or draw or utter or deliver any check, draft or order for the payment of money upon any bank or other depository, who, at the time thereof, has insufficient funds or credit with such bank or depositary, shall be guilty of a felony, and upon conviction thereof shall be fined not less than fifty dollars and not more than two hundred dollars, or imprisoned in the Ohio state penitentiary for not less than one year nor more than three years or both. * * *
 

 “As against the maker or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence of intent to defraud, and knowledge of insufficient funds in, or credit with, such bank or other depository. The word ‘credit’ as used herein shall be construed to •mean any contract or agreement with the bank or depositary for the payment of such check, draft or order, when presented.”
 

 These eight checks were all issued between March 3 and May 18, 1923, four years prior to the return of the indictment.
 

 The accused moved the court to require the state to elect upon which count it would go to trial, and the state elected to go to trial upon the eighth count, which was the first check issued upon March 3, 1923, calling for $700. This check was drawn upon the American State Bank of St. Marys, Ohio, hereinafter referred to as the State Bank, and was pay
 
 *150
 
 able to the Farmers & Merchants Bank of Burkettsville, Ohio, hereinafter referred to as the Farmers Bank, and was cashed by the Farmers Bank the day the check was drawn. When the check reached the State Bank its payment was refused for want of funds to the credit of the accused, and the check was thereupon duly protested, in order to hold the Farmers Bank and other indorsers liable for its payment.
 

 When called upon to plead to this count of the indictment, the accused entered a plea of not guilty. Prior to this the accused had raised the usual questions of validity and sufficiency of the indictment, by motions and demurrer, but the trial court had sustained the indictment.
 

 The state called as witnesses the cashier of the Farmers Bank, which cashed the check, the cashier of the State Bank, which refused payment, and the notary public who protested the check, and these witnesses testified to facts tending to support the charge in the indictment of not having sufficient funds or credit in the bank upon which the check had been drawn to meet the same when the check arrived there in the due course of exchange and that the check had been subsequently redeemed by the Farmers Bank, and thereupon the state offered the check and the certificate of protest in evidence, and rested. The accused moved for a directed verdict in his favor, which was overruled.
 

 The accused thereupon testified in his own behalf. His own evidence in chief fully and completely established the fact that he issued the check in question, and that when he did so he was aware that he did not then have to his credit in the State Bank
 
 *151
 
 funds sufficient to meet the check when it arrived at that bank. He testified that he told the cashier of the Farmers Bank that he did not have sufficient funds to his credit in the State Bank to meet the check, and testified further that he then máde an agreement with the cashier of the Farmers Bank to hold the check for a few days before sending it forward through the regular course of exchange, in order to afford the accused an opportunity to further-increase his deposit at the State Bank so that his credit balance in that bank would be sufficient to take care of the check on its arrival at the bank. He testified that at that time he paid in currency to the cashier of the Farmers Bank the interest on the amount of the check, covering the time that he requested the check be delayed in reaching the State Bank. The defense of the accused was not that he had not issued the check, but was that he had not issued it with intent to defraud; and the trial went forward upon that issue alone.
 

 The cross-examination of the state’s witnesses by counsel for the accused clearly indicated to the court, counsel for the state, and the jury as well, what the nature of the defense would be; that is to say, that at no time did the accused have any intent to defraud. Intention is a question of fact, and not one of law.
 

 When the state rested, sufficient evidence of guilt had been offered by the state to justify the action of the trial court in overruling the motion of the accused for a directed verdict.
 

 The accused offered to testify concerning several transactions of like character between these two banks and himself, for the purpose of establishing
 
 *152
 
 the fact that he had an arrangement with each of these banks to carry his checks, both before they were protested and after they had been protested for want of sufficient funds, until such time as he could take up the checks. The trial court was of opinion that some of this testimony covered too wide a field, and some of this class of evidence was excluded and exceptions saved.
 

 The case was very much out of the ordinary in its facts, and not by any manner of means a case in which it was easy at all times to rule with accuracy on the admission and rejection of evidence relating to intent. The accused was entitled to some of the evidence that was rejected. Later on in the trial the state undertook to bring forward other transactions between the accused and these banks and others, which the accused endeavored to have excluded, but his objections were overruled. Some of this evidence that was admitted was incompetent, and its admission was prejudicial to the accused. The position of counsel on each side of the case shifted more or less at times during the trial, and these changes of position added substantially to the difficulties presented to the trial court with respect to its rulings on the admission and rejection of evidence. When counsel determine during the trial to change the plan of prosecution, or of defense, or both, regardless of the status of the evidence up to that time, a condition of apparent inconsistency on the part of the court in its rulings with respect to evidence often follows.
 

 All of the testimony contained in the bill of exceptions in this case has been read in this court. To state in detail, even without discussion, the numer
 
 *153
 
 ous errors claimed by the accused in the admission and rejection of evidence would extend unwarrantably this opinion, and would serve no useful purpose. Many of the claimed errors are not tenable. It is entirely sufficient to say that a wider range of evidence should have been permitted on each side in reference to other transactions between the banks designated and the accused, as bearing upon the subject of intent, and we deem this general observation as entirely sufficient for the guidance of the trial judge who shall preside at the next trial of this ease.
 

 The accused claimed throughout the trial that he had an arrangement with these two banks to carry his protested checks until he could replenish his credit balance at the banks to meet the same. If he had such an agreement or arrangement with the banks, that would have a very direct and important bearing upon the question of intent to defraud.
 

 It must be kept in mind that the indictment and trial took place four years after the issue of the check in question. In the meantime the Farmers Bank had been closed by the state department of banks, and all of the papers and assets of the bank had been taken into the custody of the officials of the state. A diligent and determined effort was made during the trial by counsel for the accused to secure the books and papers of the bank which showed the items of cash received as interest upon March 3, 1923. The accused desired this documentary evidence to support his claim that he paid the cashier of the Farmers Bank in currency on that day the interest covering the time of delay which he arranged for with reference to the $700 check. This evidence
 
 *154
 
 was also desired for another very important purpose, and that was to contradict the testimony of the cashier of the Farmers Bank who had stated on the stand that he received no such interest and had made no such arrangement with the accused. That this evidence was of the highest importance to the accused is quite self-evident. The state officials in charge of the bank’s papers were ordered to bring into court these books and papers. They appeared in court and testified that no such documentary evidence could be found among the books and papers of the bank. After the trial and conviction, counsel for the accused continued the search and ¡discovered the books and papers desired in the hands of the state officials, and found that this documentary evidence corroborated the testimony of the accused. There is nothing in the record to show that the officials of the state were purposely concealing or withholding this evidence. The fact that this evidence had been discovered was used in support of a motion by the accused for a new trial upon the ground of newly discovered evidence. This motion was overruled by the court. This was clearly prejudicial error, and, standing alone, is sufficient to reverse the judgment in this case.
 

 Many errors are assigned by the accused in connection with the instructions of the trial court to the jury. We find one very important error. The trial court, in speaking of the provisions of the statute quoted, and particularly of the refusal of the bank on which the check was drawn to pay the same, said:
 

 “You may regard such refusal as sufficient to establish beyond a reasonable doubt the intention to defraud and knowledge of insufficient funds or credit
 
 *155
 
 in or with the bank on which the check is drawn to pay snch check, in the absence of explanation or contradiction.”
 

 It is true that in this same part of the charge and also in several other places in the charge the court told the jury that notwithstanding the
 
 prima facie
 
 presumption arising under the statute against the accused, nevertheless the jury must find from the evidence that the accused had been proven guilty beyond a reasonable doubt before the jury could return a verdict of guilty. The trouble about the charge is that it is contradictory, and it cannot be said with certainty that the jury gave heed to the court’s other statements of the law and disregarded this incorrect statement of the law.
 

 This court has several times held that, where there is an erroneous charge given, which is not withdrawn from the consideration of the jury, the error cannot be cured by correctly stating the law upon the same subject in some other part of the charge. The charge makes manifest the desire that the trial court had to place the full burden upon the state with respect to proving the accused guilty beyond a reasonable doubt; but this most unfortunate statement is in the charge and its effect cannot be disregarded.
 

 The cashier of the Farmers Bank was indicted upon several grounds, in connection with the closing of the bank by the state, and he was serving a sentence in the penitentiary when called by the state to testify in this case. After he had testified generally, in which testimony he denied many of the statements made on the witness stand by the accused, he was recalled to the stand by counsel for the
 
 *156
 
 state and was asked if he had omitted to state something which he desired to state, and he said that he had. Thereupon counsel for the state asked him to tell what he had in mind. This statement of counsel for the state was objected to by the accused, but his objection was overruled, the court stating that the witness might make any explanation which he desired about his testimony, and thereupon the cashier of the Farmers Bank said that his present situation in the penitentiary and all of his troubles in connection therewith were due directly to the actions of the accused. This statement was bitter and most intense in character, and was evidently made with an attempt to destroy the character and standing of the accused with the jury to the fullest extent possible. The statement was promptly objected to by counsel for the accused, and the court, recognizing the. irrelevancy and entire impropriety of the statement, told the jurors that they should not consider the statement. It is very doubtful whether such a statement from the trial judge to the jury could withdraw the sting or effect of the statement. The record shows that the accused and this cashier of the Farmers Bank were on the best of terms when these checks were issued, and that the accused at that time was doing a considerable business with the two banks in question. The trial court would have been entirely justified if it had withdrawn a juror and continued the case for retrial on account of this statement of the cashier in the presence of the jury.
 

 Throughout the trial the accused contended that at the time these checks were issued he was on very friendly terms with the officials of both the State
 
 *157
 
 Bank and the Farmers Bank, and that in connection with his real estate transactions he did a very large amount of business through each of the banks, and that the banks suffered no loss by reason of these transactions. When the president of the State Bank was on stand, he was asked if it was not quite common for that bank to carry for a limited time checks issued by the accused when he did not have sufficient funds on hand to meet the checks as presented. He first answered that this did not often occur; and a little later he said that it was occasionally done, but that the bank always protected itself by first protesting the check, before it granted time to the drawer of the check to come in and take it up. He said that the accused was not always prompt in taking up the checks at the time designated, but, when asked if he did not in the end take them all up, he answered that he did, and added that the bank never lost a dollar by cashing checks for the accused; and, when asked if it was not true that at that time the accused was doing many thousands of dollars of business through the State Bank, he answered that that was true.
 

 The record clearly discloses that there was a very large number of transactions between the- accused and these two banks with respect to which the banks were carrying checks issued by the accused, and not sending them promptly through in the ordinary course of exchange. The accused insisted that he had a definite arrangement and understanding of this kind with the officials of both banks, and the accused was entitled to have admitted any evidence that tended to sustain this position. If the accused advised the Farmers Bank prior to the issuing of
 
 *158
 
 checks that he did not then have the funds on deposit, or credit arranged for that would cause the check to be paid on presentation, then manifestly the bank was not deceived by any misrepresentation, and the issuing of a check under such conditions would not be a procurement of the funds of the bank with an intent to defraud, as stated in the statute. Instead it would be a plain loan on the part of the bank of credit or cash to the accused for the time designated in.the arrangement so made.
 

 We have not failed to consider the claim of counsel for the accused that the statute upon which this prosecution is based is unconstitutional because it gives to the state the benefit of a presumption of fact against the accused when under the law the state carried at all times the burden of proving the accused guilty beyond a reasonable doubt. Manifestly the
 
 prima facie
 
 presumption mentioned in the statute cannot take the place, either in whole or in part, of the long-established law that guilt can only be predicated upon a finding by the jury against the accused beyond a reasonable doubt. We do not understand counsel for the state in this court as contending that this provision of the statute may be used to supplement evidence, which, without the statute, would fall short of establishing proof beyond a reasonable doubt.
 

 For the prejudicial errors mentioned, the judgment of the Court of Appeals will be reversed and the cause remanded for a new trial.
 

 Judgment reversed and cause remanded.
 

 Marshall, C. J., Robinson, Jones, Matthias, Day and Allen, JJ., concur.