### RICHARDS v STATE

Ohio Appeals, 5th Dist, Holmes Co

No 218. Decided March 11, 1932

Attorneys not given.

LEMERT, J.

We will take up the several claimed grounds of error in the order herein indicated; the first claimed ground of error being in the overruling motion for change of venue, and will first look to the Statute governing a motion for change of venue, and an examination of §13,636 GC, as the same stands repealed in 113 O L, 132, and is now covered by §13,427—1 GC; which provides as follows:

"If it appears to the court, by affidavit or evidence in open court, that a fair and impartial trial cannot be had in the county where a cause is pending, such court shall order that the accused be tried in any county of the state, etc."

**Art 1, §10** of the Bill of Rights in the Ohio Constitution, provides in part as follows:

"***In any trial in any court the party accused shall be allowed to have a speedy public trial by an impartial jury of the county in which the offénse is alleged to have been committed ***"

The Statute above quoted, dealing with the matter of change of venue, is an exception to the general rule and should only be granted when it becomes manifest to the court that a fair and impartial trial can not be had in the county where the crime was committed, and, further, the right to order a change of venue, we believe lies in the sound discretion of the trial court.

In the instant case affidavits were filed in behalf of the accused to tend to show that a fair trial could not be had, and an equal number were filed by the state, sworn to by leading disinterested citizens throughout the county, stating that a fair and impartial trial could be had in Holmes County. In addition to this, evidence was introduced and both the accused and the state were given a full opportunity to present the respective merits of the matter of change of venue to the court, and upon all this evidence the court overruled the motion for

change of venue, stating in substance that the affidavits of ten to fifteen persons, pro and con, were not sufficient to authorize a change of venue at that time, and that the question could only be properly determined when the ultimate test arrived when it came to impaneling a jury; the Court stating that if, after a reasonable effort, it becomes apparent from an examination of jurymen that prejudice and feeling and opinions preconceived are so wide spread that the obtaining of a fair and impartial jury is problematical, a change should be ordered:

We believe this holding and view of the Court is approved and held sound and proper by the Courts of Ohio.

"Granting a change of venue is a matter largely within the discretion of the trial judge, and unless there is an abuse of discretion, there is no error in overruling a motion for a change in venue."

12 Ohio Jurisprudence, 127, citing numerous Ohio cases.

"The Court of Common Pleas has no authority by the common law to order a change of venue, the power existing only by virtue of Statute."

"Where it is contended that an impartial jury can not be impaneled, it seems that the Court may, in such a case, postpone or overrule the motion until it is ascertained by the examination of jurors whether a fair and impartial jury can be impaneled. In such a case the motion is overruled without prejudice to the defendant; he having the right to file another motion for a change of venue while the impaneling of the jury is in progress. It has been said that it is not an abuse of discretion for the court to do this, even though the affidavits for the defendant make a showing that would justify a change of venue."

12 Ohio Jurisprudence, 131.

"Such action of the court on an application for a change of venue—are all matters of discretion, the exercise of which will not be reviewed, in the absence of an abuse."

12 Ohio Jurisprudence, 845, 846.

Counsel for plaintiff in error cites the case of Baxter vs State, 91 Oh St 167, as authority for the right of the accused to have a change of venue. The Baxter case involves a matter of embezzlement of bank funds, and is decided upon a construction of §11,416 GC, where a corporation is involved having more than fifty stockholders and is a party to the action, or, as held in the Baxter case, where an officer of such corporation is charged with embezzlement of funds of said corporation. In the instant case the defendant, Richards, is an individual, not an officer of a corporation, and is not charged with embezzlement of funds, but is charged with the forgery of Eight Thousand Dollars worth of Government Bonds, owned and belonging to an individual, William Siegel, and which were left by Siegel with William Miller, as an individual, for safe keeping. This is strictly a charge for forgery, and the party losing out in the transaction is William Siegel, an individual, whereas, in the Baxter case, there were numerous stockholders who would stand to lose money by the embezzlement of the corporation funds.

We also call attention to the case of **Hawkins vs State, 27 Oh Ap 297; Townsend vs State, 17 O C C (N. S.) 380; State vs Elliott, 25 Bulletin, 366;** also, **State vs Smith, 16 O N P, (N. S.), 535;** in which latter case many other cases are cited and which support the correctness of the holding of the Common Pleas Court in this case on the matter of change of venue.

We further note that the Court at the time of the hearing on the application for a change of venue overruled the Motion without prejudice; and we further note that at no time when the jury was being impaneled or sworn, or at any other time, did the plaintiff in error renew his motion for a change of venue. Plaintiff in error appeared to be well satisfied with the ruling of the Court on the matter of change of venue without prejudice until after the jury was impaneled and sworn by the Clerk, and then for the first time after the overruling of the motion for the change of venue, counsel for the defendant below objected to the swearing of the jury, for the reason that "it is not a fair and impartial jury." There was no renewing of the motion for a change of venue and the objection to the swearing of the jury was made after the jury had been completely impaneled and sworn by the clerk.

We therefore find and hold that this ground of error is not well taken.

On another ground of error, to-wit, error in permitting testimony of other transactions other than the alleged forgery: Counsel for defendant below seemed to object that his client was tried in this case as aiding and abetting in the forgery of the Siegal bonds, and on this proposition we have considered §12,380 GC, which provides:

"Whoever aids, abets, or procures another to commit an offense may be prosecuted and punished as if he were the principal offender."

The form of charging one who aids and abets the same as the principal offender has been followed in the case of State vs McDermott and other leading Ohio criminal cases, and the term "prosecution" has been consistently held to apply to the matter of the indictment. However, the defendant in the instant case having stood trial on a plea of "Not Guilty", we can not see how the defendant could be prejudiced in this matter.

Counsel for the defendant below further complained that other transactions pertaining to stock purchases and sales and the procuring of the money for these transactions and the scheme and plan of these operations by Richards and Miller is improper evidence. It was the claim of the State that if these two men in 1926 entered into a plan and scheme to carry on a series of thefts, forgeries, etc., for their personal gain and advantage, that all the elements dealing with a general conspiracy to deal likewise from 1926 to 1930 were admissible on the trial of the instant case. The claim is made that they are admissible not for the purpose of establishing the guilt of the party, but are admissible to establish motive and intent, which are necessary elements for the State to establish and prove under a plea of "Not Guilty", and all of these acts and the conduct of the defendant are admissible under the rules of evidence dealing with the matter of conspiracy after a prima facie case of conspiracy is established by the evidence in the case.

While it is the general rule that a distinct crime in no way connected with that of which the defendant stands indicted can not be given in evidence against him on trial, an exception to the rule exists in cases where testimony of other offenses is offered for the purpose of showing a motive for the commisison of the offense charged. It has been held that the general rule of exclusion of testimony of other offenses does not apply to a case in which it is clearly shown that a connection in the mind of the defendant must have existed between the offense charged in the indictment and others of a similar nature. When such connection exists, evidence of such other offense is admissible, not for the purpose of raising a presumption of guilt, on the hypothesis that a man who commits one crime will presumably commit another, but for the purpose of showing motive for, or

purpose in, the commission of the offense laid in the indictment, and, being competent for this purpose, it can not be properly excluded on the ground that it tends to show the commission of other distinct offenses. And this rule is now expressly recognized by the General Code, which provides that, in any criminal case where the defendant's motive is material, any like act or acts of the defendant which may tend to show his motive, may be proved, whether they are contemporaneous therewith, or prior or subsequent thereto, and notwithstanding that such proof may show, or tend to show, the commission of another or subsequent crime by the defendant.

Another exception to the general rule above quoted, exists where the occurence charted and the one sought to be proven are parts of a single crime, connected by unity of plot and design, and in effect constituting one transaction. The General Code provides that, in any criminal case where the defendant's scheme, plan, or system in doing an act is material, any like act or other act of his which may tend to show his scheme, plan or system in doing the act in question, may be proved, whether contemporaneous therewith or prior or subsequent thereto, and notwithstanding that such proof may show, or tend to show, the commission of another or subsequent crime by the defendant.

"It is well settled that evidence of a general scheme of conspiracy and confederation to commit crime is admissible on the part of the State, for the purpose of proving scienter, motive, intent, and the like, where a single offense, only, is charged in the indictment."

**Curtis vs State, 113 Oh St, 187.**

Therefore it follows "If it is competent to prove a conspiracy, it follows that any evidence tending to establish the conspiracy is also competent."

**12 Ohio Jurisprudence, §329.**

In the case of **Patterson vs State, 96 Oh St, 90,** it was held that evidence relating to a criminal conspiracy is competent not only as tending to prove the criminal plan, but also as corroborative of the testimony of a fellow conspirator.

In the case of **Goins vs State, 46 Oh St 457,** it was held that the conspiracy need not be one to commit the identical offense charged in the indictment, or even a similar one, it being enough that the offense charged in the indictment was one which might have been contemplated as a result

of the conspiracy.

As a general rule conspiracy is usually proved by proof of the separate acts of several persons, concentrating in the same purpose or particular object to be attained; and the greater the secrecy that is observed relative to the object of such concurrence and the more apparent the similarity of the means employed to effect the object, the stronger is the evidence of the conspiracy. And where it is proved by their conduct that alleged conspirators were pursuing the same object by the same means, each performing a different part of the act with a view to its attainment, it may be concluded that the parties were engaged in a conspiracy to effect that object, and a jury would be justified in so finding. A conspiracy may be also proved by the direct testimony of one of the conspirators.

In the case of **Hughes v State, 29 O C C, 237,** it will be noted that an attempt was made to bind the defendant, Hughes, by statements of third parties, not made in the presence of the defendant, nor with his knowledge. The Court in that case said:

"Upon adequate proof that a conspiracy exists and that a defendant has entered into it, he is bound by the conduct of his confederates in furtherance of their common unlawful purpose."

In **Curtis vs State, 113 Oh St 187,** it was held:

"Where, in a prosecution for crime, persons alleged to be accomplices of the defendant have testified on behalf of the state, it is not error for the court to refuse to instruct the jury that they are in fact accomplices, but the court should define an accomplice, and leave it to the jury to determine whether or not the witness is an accomplice."

Further holding:

"It is only necessary that there be evidence tending to prove each essential element of other similar crimes."

It is to be noted that the charge of the court, complained of by counsel for defendant, directly conforms to the law as set forth in the instant case, as being admissible to prove motive, intent and the existence of a general conspiracy. The testimony of Miller, the co-conspirator, is just one part of the mass of the record evidence in the instant case. On the testimony of Gerald Miller, complained of, we note that one Dr. Lohaas, at page 345, testified:

"I heard Tom Richards (defendant) tell his son Harold to tell Gerald Miller to tell Bill (William A. Miller) not to turn State's evidence."

After this testimony was introduced the defendant then took the stand and denied that he had told his son Harold this quoted statement, made by Dr. Lohaas. The evidence of Gerald Miller, as given on page 429 of the record, was therefore proper to establish in rebuttal the truth of Dr. Lohaas's statement, and also to challenge the truthfulness of the defendant's denial of such instructions to his son to get to Miller through his son Gerald and have Miller not to turn State's evidence; bearing in mind that both the men, Miller and Richards, were in jail at the time and this being the most available means of communication.

In the **13 Oh Ap 106,** it was held:

"Attempts to suppress evidence indicate a consciousness of guilt, and, if proven to have been made by defendant, are highly probative of criminality."

We therefore find and hold this ground of error not well taken.

On the matter of the misconduct of spectators: We recognize the rule that a Court of Appeals can not be controlled by anything but the written record.

**Boutel vs State, 36 Oh Ap, 73.**

And on the matter of the claim that numerous outbursts of applause, claimed by the defendant below in his Brief and argument: We note from an examination of the record that during the trial of the case there was some applause by the spectators at one time, as appears on page 293 of the record, on the cross-examination of Miller by counsel for defendant, and at that time it was confirmed to several persons, and was not general. We note that the Court immediately gave the following warning, at page 294:

"By the Court: I want to caution those of the people who are here listening to this trial—you are here to listen. You are not here to comment and made demonstration. The Bailiff is instructed if there are any more demonstrations in the audience to remove those making the demonstration."

It was held in the case of **Shook vs State, 31 Oh Ap 90,** that,

"***Applause by spectators at the trial at the conclusion of said argument, immediately quelled by the trial judge, who promptly and properly admonished the jury, do not constitute manifest prejudicial error."

On the matter of error in, charge and in further instructions after retirement of jury: From a careful examination of the charge of the court in the instant case, we find that the court clearly confined the evidence of other transactions to the matter of conspiracy, motive and intent, and was careful to warn that if any other crimes developed in establishing a conspiracy they were not to be considered as evidence of the guilt of the defendant, Richards, on the charge of forgery.. He also charged that the question of a general conspiracy between these two men must be established beyond a reasonable doubt. We believe the Court's charge in this case was a direct, distinct, proper and clear statement of the law governing the case.

Counsel for the defendant below claims there was error in the giving of additional instructions by the court, and infers that he was not given an opportunity to see the requests made by the jury for these additional instructions.

Sec 11,420-6 GC, provides:—

"After the jurors retire to deliberate, if they disagree as to the testimony, or desire to be further informed on the law of the case, they may request the officer in charge to conduct them to court, which shall give the information sought upon matters of law, and, also, in the presence of or after notice to the parties or their counsel, may state its recollecton of the testimony upon a disputed point."

The record discloses that at the time this request was made counsel for the defendant were present, when the additional instructions were asked for by the jury, and that they knew that such request had been made. The record discloses that counsel for the defendant were present at their table when the Court· took the Bench to advise the jury on the points of law requested. The record fails to disclose that either counsel for defendant requested of the Court advice as to the contents of the request. The record discloses that no request was made by counsel for the defendant and no exception or objections made to the Court on these matters. The record discloses that counsel for the defendant, after the additional charges were given, went to the desk of the official stenographer, without knowledge of the court, and then dictated the objections and exceptions as set forth in the transcript. We also note from the transcript that the Court in correcting the same states that he had no knowledge that counsel for defendant desired to know the contents of the requests or took any objections or exceptions to the same. We further note that· the instructions so given were given from the original charge of the court and that the same correctly stated the law.

Sec 11,420-6 GC, hereinbefore quoted, does not require the voluntary notification of counsel for defendant of the contents of a request for additional instructions, and clearly so where counsel for defendant is present and makes no request of the Court.

The rule of law set forth in **35 Oh Ap 311, 26 Oh Ap 295**, and at numerous times pronounced by the Appellate Courts, "That one can not complain of error which he procures to be done", applies in the instant case.

We therefore find from the whole of the record that the defendant was given every consideration provided by law for the protection of his rights and that he obtained a fair and impartial trial, and it therefore follows that the finding and verdict of the jury should be and the same is hereby sustained and judgment affirmed. Exceptions may be noted.

SHERICK, J, and MONTGOMERY, J, concur.