THE STATE OF OHIO, APPELLEE, *v.* STEMEN, APPELLANT.

(No. 689—Decided April 17, 1951.)

*Mr. Howard G. Eley,* prosecuting attorney, for appellee.

*Mr. George A. Meekison* and *Mr. Otto W. Hess,* for appellant.

*Per Curiam.* This is an appeal on questions of law from a judgment of the Common Pleas Court of Darke County. The defendant was indicted and tried on sixteen counts charging that he issued checks with intent to defraud, contrary to the provisions of Section 710-176, General Code. He was convicted on fifteen counts. One count was dismissed.

Before trial the defendant moved for a change of venue. The court overruled the motion without prejudice, stating that the matter might be considered again should such cause be shown on *voir dire* examination of the prospective jurors. Nothing developed on the *voir dire* examination to show cause for a change of venue. The jurors were examined, impaneled and sworn. Thereafter counsel for defendant renewed his motion, which was overruled. Support for this action is found in *Richards* v. *State,* 43 Ohio App., 212, 216, 217, 183 N. E., 36. A change of venue is a matter which rests within the sound discretion of the trial court. We find no abuse of discretion present.

Neither do we find any prejudicial error committed in requiring the defendant to go to trial under an indictment which charged him, in sixteen separate counts, with issuing sixteen separate checks. Whether the defendant should be tried on all sixteen counts, or on separate counts, or whether the counts should be separated into groups was a matter which rested within the sound discretion of the trial court. Section 13437-3, General Code. No abuse of discretion is shown.

The checks in question were drawn on the Van Wert National Bank. The state called as a witness one Vernie Townsend, assistant cashier of the Second National Bank of Greenville, in which bank The Ohio Feed Company, of which corporation the defendant was president and general manager, had a checking account. Over defendant's objection the court permitted to be introduced as exhibits a number of checks drawn on the Greenville bank, and a ledger sheet covering the period from August 1949 to January 24, 1950. The witness was examined and cross-examined at length concerning this bank account. It was contended by the defendant that this evidence suggested some irregularity in the banking operations, although no irregularities were actually shown, and that such evidence prejudiced the minds of the jurors. No objection was interposed by the defendant to the testimony of the witness and the record shows that defendant's counsel interrogated the witness on cross-examination with respect to these matters. The record is not clear that defendant offered exhibit 18. The state offered to introduce exhibit 18, and defendant's objection was sustained. The state was permitted, over defendant's objection, to introduce the ledger sheet, exhibit 20. Both the state and defendant offered to introduce the checks drawn on the Greenville bank, exhibit 19, although the record shows defendant finally objected to introduction of the checks when offered by the state. While this testimony may have been irrelevant, we do not find that the admission of exhibits constituted prejudicial error.

Defendant claims that the prosecuting attorney, in his closing argument to the jury, referred to certain factual matters not in evidence. The state claims that these remarks were provoked by the argument and statements made to the jury by counsel for the

defendant. Affidavits are attached to the briefs of the prosecuting attorney, supporting the claim that such remarks were uttered in retaliation. These affidavits are no part of the record. However, the record shows that objection was made by counsel for the defendant to certain statements made by the prosecuting attorney to the jury during his closing argument. The prosecuting attorney immediately said: "I will withdraw that statement." The court said: "Very well." No instructions to the jury were requested or given. Apparently both counsel and the court did not regard the remarks of sufficient seriousness to require further comment. In our opinion the record does not show that prejudicial error was committed.

We come now to a consideration of the principal question presented. Does the evidence warrant a finding of intent to defraud under Section 710-176, General Code? This section, in part, provides:

"Any person, who, with intent to defraud, shall make or draw or utter or deliver any check, draft or order for the payment of money upon any bank or other depository, *who, at the time thereof,* has insufficient funds or credit with such bank or depository, shall be guilty of a felony * * *.

"As against the maker or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, *shall be prima facie evidence of intent to defraud, and knowledge of insufficient funds in,* or credit with, such bank or other depository." (Emphasis ours.)

Intent to defraud is an essential element of the crime charged. As against the drawer of the check, the fact that payment of the check is refused is prima facie evidence of intent to defraud, and knowledge of insufficient funds in the bank. However, our Supreme

Court has held, in *Koenig* v. *State*, 121 Ohio St., 147, 167 N. E., 385, that, in a prosecution under Section 710-176, General Code, to charge the jury that evidence that the check was refused payment was sufficient to establish beyond a reasonable doubt the intent to defraud and knowledge of insufficient funds in the bank, in the absence of explanation or contradiction, constituted reversible error. In the syllabus it is stated that the prima facie presumption provided in this section is not alone sufficient to warrant the jury in finding the accused guilty beyond a reasonable doubt. On page 151, the court said: "Intention is a question of fact, and not one of law." See, also, *Huffman* v. *State*, 205 Ind., 75, 185 N. E., 131.

What does the evidence in the instant case show? The essential facts are not in dispute. The defendant, his father and a third person in 1943 incorporated The Ohio Feed Company. The defendant's father and the third person invested no money in the corporation, but each was issued one share of stock. The defendant contributed all the assets of the corporation. At the time the corporation was organized the defendant was elected president and general manager; the father and the third person were elected vice-president and secretary-treasurer, respectively. The corporation, beginning in 1945, operated several grain elevators. The corporation prospered and acquired interest in other elevators. In 1949, and in the early part of 1950, the corporation was operating six separate elevators in six separate communities in the western part of Ohio, one of which was located in the city of Greenville. The principal place of business of the corporation was located in Van Wert, Ohio. The Ohio Feed Company, at the various elevators, purchased grain from the farmers and sold to the farmers feed, coal, fence, etc. Each

elevator had a manager and a staff of employees. Inasmuch as the Greenville operation is involved, we recite the evidence as it relates to the operation of the business of the Greenville plant. All purchases were paid for by checks drawn on the Van Wert National Bank. As farmers would deliver grain at the Greenville elevator and request payment, the bookkeeper at the Greenville elevator would determine the amount due and draw a check on the Van Wert National Bank and deliver the check to the farmer. Each day a summary sheet would be made up by the bookkeeper and mailed to the principal office at Van Wert, which summary showed all business transactions at the Greenville elevator for the previous business day. These summary sheets showed all checks drawn against the account of the Van Wert National Bank, the amount of the checks, and to whom payable. The same procedure was followed at all other elevators. On the second day following the transaction the main office of the corporation in Van Wert had the information as to the number and amount of checks, to whom payable, and the aggregate amount thereof drawn on the Van Wert bank. From the information furnished, the employees of the corporation at the Van Wert office were able each day to determine the bank balance. The record further shows that each day an employee of the Van Wert National Bank would call the main office of the corporation at Van Wert and inform the bookkeeper or some other employee of the corporation of the aggregate amount of checks which were presented for payment on that particular day. Thereupon, an employee of the corporation would go to the bank and pick up all checks presented on that particular day and write a check against the same account in the aggregate sum of all the checks picked up and leave one check in the possession of the bank. The

checks from the bank were taken to the main office of the corporation in Van Wert and checked against the summary sheets and other records. On the first succeeding business day, or at the latest on the second succeeding business day, after the transactions took place at the several elevators, the main office of the corporation in Van Wert was informed of the transactions and knew, or should have known, the correct status of the bank account.

The evidence shows that the defendant spent all his time at the principal office of the corporation in Van Wert, and did not know of the transactions being conducted at the several elevators. The defendant established the bookkeeping system used by the corporation, and in co-operation with the Van Wert National Bank established the procedure to be followed by the corporation and the bank respecting the picking up of checks presented to the bank on any particular day and the substitution thereof of one check drawn on the same account by the corporation. The defendant, acting for the corporation, employed a manager at each elevator to conduct the business at the elevator. At the Greenville elevator one Knodle was the manager, who employed Henrietta Brand as bookkeeper. Miss Brand took immediate orders from Knodle, but the defendant testified that Miss Brand had full authority to write checks for purchases made at the Greenville elevator. The record shows that the defendant issued the orders for the corporation and was at all times the directing head of the corporation. In fact, it was a ''one-man'' corporation.

All the checks in question were drawn at the Greenville elevator by Miss Brand and signed ''The Ohio Feed Company, by Henrietta Brand.'' The name or signature of the defendant did not appear on the checks. In drawing and issuing these checks Miss

Brand was acting within the scope of her authority and by direction and permission of the defendant.

We are of the opinion that under the facts in this case the defendant is legally and criminally responsible for the acts of Miss Brand in drawing and issuing the checks when there was no reasonable expectation of payment. The defendant cannot shield himself behind a corporate organization or the fact that he was acting in a corporate capacity. The corporate entity will be disregarded. *State* v. *Standard Oil Co.,* 49 Ohio St., 137, 177, 30 N. E., 279, 34 Am. St. Rep., 541, 15 L. R. A., 145; *Meyer* v. *State,* 54 Ohio St., 242, 43 N. E., 164; *Hitchcock* v. *State,* 47 Ohio App., 90, 190 N. E., 773; *Wood* v. *United States,* 204 F., 55; *Kelly* v. *United States,* 258 F., 392; *Boyd* v. *United States,* 275 F., 16; *Cowley* v. *People,* 83 N. Y., 464, 38 Am. Rep., 464; *People* v. *Bliven,* 112 N. Y., 79, 19 N. E., 638, 8 Am. St. Rep., 701; *People* v. *Sherman,* 133 N. Y., 349, 31 N. E., 107; *People* v. *Siman,* 197 N. Y. Supp., 713; *State* v. *Thomas,* 123 Wash., 299, 212 P., 253, 33 A. L. R., 781; 8 Ruling Case Law, 66, Criminal Law, Section 17; 19 Corpus Juris Secundum, 364, Section 931; 33 A. L. R., 787; 7 Thompson on Corporations (3 Ed.), 1927, Section 5633; 1 Davies, Ohio Corporation Law, 192, Section 3, and 905, Section 38.

In the instant case the state produced no evidence to show the intention to defraud other than that which may be inferred from the method of doing business, and the procedure followed by the corporation and the bank, and information gathered at the main office as to the transactions which took place at the various elevators, all of which affected the bank balance on each succeeding business day. There is no evidence in this case to show that the defendant withdrew for personal use any sum of money from the Van Wert

National Bank or used any of the funds for any purpose other than the conduct of the business.

Under the provision of Section 710-176, General Code, it must be shown that there are insufficient funds or credit at the bank "at the time thereof," which refers to the time of issuing the check. The defendant contends that he cannot be found guilty under this section unless it be shown that on the day the checks were issued there were insufficient funds in the bank to meet the check, and cites the text in 35 Corpus Juris Secundum, 660, as authority, which is as follows:

"To constitute the crime, the insufficiency of the funds must exist at the time the check is issued. [Several cases are cited in the footnote in support of the text.] If there were sufficient funds on deposit at that time the offense is not committed, even though by subsequent changes the funds were rendered insufficient; *but this is not true where the drawer knows that other checks which he has drawn, but which have not yet cleared, will deplete the fund before the check in question can be presented.*" (Emphasis ours.)

The jury would have a right to infer an intent to defraud if checks were drawn on the bank when the funds were insufficient or the defendant had no reasonable ground to believe the funds would be sufficient by the time the check would be presented in due course.

We now consider the evidence, taking up the checks in chronological order.

On January 6, 1950, a check was issued in the amount of $871.26. From January 6, 1950, until January 28, 1950, the bank balance was sufficient to meet the check. This check, together with all other checks involved in all the counts, was presented on one day, to wit, January 28, 1950. The aggregate

amount of these checks was $32,362.65. On January 10, 1950, a check was issued in the sum of $1,544.12. There were sufficient funds in the bank to cover this check at all times from the date the check was issued until January 24, 1950. On January 20, 1950, a check was issued in the amount of $1,409.82. There were sufficient funds in the bank to cover this check on the date it was issued. In the meantime, from January 6, 1950, to January 20, 1950, numerous checks were issued by the several elevators against this account and paid, but the bank balance at all times was sufficient to meet the payment of these three checks.

In prosecutions for issuing checks with intent to defraud, reasonable expectation of payment constitutes a defense. 35 Corpus Juris Secundum, 657, Section 21. The evidence with respect to three of the counts requires the application of this rule.

It, is our opinion that the evidence is insufficient to find the defendant guilty beyond a reasonable doubt of the intent to defraud the payees of these three checks as charged in counts numbered 8, 3 and 10 of the indictment.

On January 24, 1950, four checks were issued, totalling $10,209.05. Neither on that day nor at any time thereafter were there sufficient funds in the bank to meet the payment of these checks, although there were sufficient funds in the bank to meet one of the checks. However, we believe that when four checks are issued in one day, totalling an amount of $10,209.05, and only $983.87 is shown as the bank balance, the jury may infer an intent to defraud with respect to the issuing of all of such checks.

On January 25, 1950, four checks were issued totaling $10,021.38. Again there were sufficient funds in the bank to meet one of the checks, but the bank balance on that date was $1,812.06, and at no time there-

after was the bank balance sufficient to meet all the checks issued on that day. On January 26, 1950, two checks were issued, totalling $662.84. While the bank balance was slightly larger than the total of those checks, in view of the issuing of over $20,000 worth of checks in the two previous days and the insufficiency of the bank balances on those days, the jury would have the right to infer that there was an intent to defraud the payees of those checks. On January 27, 1950, one check was issued in the amount of $5,991.68, and on January 28, 1950, one check in the amount of $712.57. On the days these checks were issued the bank balances were insufficient to meet the checks.

All the checks involved in this indictment, totaling $32,362.65, were presented on January 28, 1950. In the meantime, from January 24 to January 28, 1950, numerous other checks had been drawn and paid by the bank from this account. The number of checks and the amount paid are not stated in the record. Also, during that period of time substantial deposits were made in the bank account, but the bank balance was insufficient to cover all the checks issued during that period.

This court is of the opinion that the evidence is sufficient to justify a finding by the jury that the defendant was guilty of an intent to defraud the payees of the checks issued on January 24, 25, 26, 27, and 28, 1950, as charged in counts numbered 1, 2, 4, 11, 7, 9, 13, 14, 6, 16, 12 and 15.

*Judgment reversed in part and affirmed in part.*

HORNBECK, P. J., WISEMAN and MILLER, JJ., concur.