THE STATE OF OHIO, APPELLEE, *v.* TANNYHILL, APPELLANT.*

(No. 507—Decided April 23, 1956.)

---

*Motion for leave to appeal overruled July 5, 1956. Appeal dismissed, 165 Ohio St., 482.

*Mr. Thomas F. Dewey,* prosecuting attorney, for appellee.
*Mr. Henry G. Stahl,* for appellant.

Fess, J. This is an appeal on questions of law from a sentence imposed upon a verdict finding defendant guilty of murder in the first degree without recommendation of mercy.

Although a number of errors are assigned, in our opinion the only error requiring extensive comment is the overruling of defendant's motion for a change of venue.

The Constitution of Ohio declares that the right of trial by jury shall be inviolate (Section 5, Article I) and that in any trial in any court the accused has a right to be tried by an impartial jury of the county in which the offense is alleged to have been committed (Section 10, Article I, Constitution). The sole purpose is to guarantee the perpetuity of the institution of trial by jury as it had long existed at common law (*Inwood* v. *State,* 42 Ohio St., 186; *Belding* v. *State, ex rel. Heifner,* 121 Ohio St., 393, 169 N. E., 301) and thus preserve all its benefits to the accused in all criminal cases. *Work* v. *State,* 2 Ohio St., 296, 59 Am. Dec., 671. Accordingly, it is beyond the power of either the courts or the General Assembly to abridge or impair this right. *Work* v. *State, supra; Simmons* v. *State,* 75 Ohio St., 346, 79 N. E., 555; *Hoffman* v. *State,* 98 Ohio St., 137, 120 N. E., 234; *Helber* v. *State,* 37 Ohio App., 333, 174 N. E., 804; *State, ex rel. Hartinger,* v. *Court of Common Pleas,* 84 Ohio App., 241, 86 N. E. (2d), 810.

At early common law, the proper venue of a crime was the county where it was committed, 14 American Jurisprudence, 929, Section 232, and in Ohio it has been held that the Common Pleas Court has no authority by the common law to order a change of venue in criminal cases. *State* v. *McGehan,* 27 Ohio St., 280. But, in furtherance of the right of an accused to a fair and impartial trial by jury, it has long been provided by statute that if it appears to the Court of Common Pleas, by affidavit or evidence in open court, that a fair and impartial trial can not be had in the county where a cause is pending, such court shall order the accused tried in another county. Section 2931.29, Revised Code (Act of February 26, 1816, 14 Ohio Laws, 386). It has been uniformly held by Courts of Appeals as well

as Common Pleas Courts that the granting or denying of a change of venue rests within the sound discretion of the trial court, and unless there is an abuse of discretion, there is no error in overruling the defendant's motion. 15 Ohio Jurisprudence (2d), 378, Section 156; *Townsend* v. *State,* 17 C. C. (N. S.), 380, 25 C. D., 408; *Hawkins* v. *State,* 27 Ohio App., 297, 161 N. E., 284; *Dorger* v. *State,* 40 Ohio App., 415, 179 N. E., 143; *Richards* v. *State,* 43 Ohio App., 212, 183 N. E., 36. And where it is contended that an impartial jury can not be impanelled, the court may postpone or overrule the motion until it is ascertained by the examination of jurors whether a fair and impartial jury can be impanelled. 15 Ohio Jurisprudence (2d), 379, Section 156; *State* v. *Stemen,* 90 Ohio App., 309, 106 N. E. (2d), 662. In such case, the motion is ordinarily overruled without prejudice to the defendant, and he has the right to file another motion for a change of venue while the impanelling of the jury is in progress. 15 Ohio Jurisprudence (2d), 379, Section 156; *State* v. *Smith,* 16 N. P. (N. S.), 535, 24 O. D. (N. P.), 476; *State* v. *Stemen, supra.*

The Supreme Court recognizes that the determination of a change of venue lies within the sound discretion of the trial court, but holds that the question involves a substantial right of the defendant to be tried by a fair and impartial jury. *Baxter* v. *State* (1914), 91 Ohio St., 167, 110 N. E., 456; *Hawkins* v. *State, supra; Dorger* v. *State, supra; Richards* v. *State, supra;* and *State* v. *Stemen, supra,* were all decided after the *Baxter case* and are to be distinguished on the facts.

In the instant case, in support of his motion for a change of venue, defendant called as a witness the managing editor of The Fremont News-Messenger, a daily newspaper having a circulation of 14,000 in Sandusky and adjoining counties. Some fifty-nine editions of this paper, running from May 2 to September 15, 1955, were admitted in evidence. These papers carried full, complete, and detailed accounts of the murder, the events leading to the arrest of the defendant in Kansas, his return to Fremont, his confessions, and later jailbreak, subsequent arrest and return to Fremont. Although headlined, the accounts were no more sensational than the normal account with respect to a brutal murder committed within the confines of a community.

There was no editorial comment, other than one complimenting the authorities concerning their diligence in apprehending the fugitive defendant. The stories were factual in character, without the use of inflammatory adjectives.

Evidence was introduced to show also that accounts were carried in the Toledo Blade, Sandusky Register and several weekly papers in the county.

The other witness was the manager of radio station WFRO, who identified news material broadcast by the station relating to the Tannyhill case, as well as other news items.

Although the Supreme Court has not had occasion to pass upon the relationship of newspaper or radio publicity to an application for change of venue,[1] Appellate Courts have held that proof of inability to secure a fair trial is not established by news articles alone. *State* v. *Elliott*, 25 W. L. B., 366, 11 Dec. Rep., 253, affirmed 27 W. L. B., 52; *Townsend* v. *State*, 17 C. C. (N. S.), 380, 25 C. D., 408; *State* v. *Dickerson*, 7 N. P. (N. S.), 193, 19 O. D. (N. P.), 44; *State* v. *Richardson*, 39 Ohio Law Abs., 608, 54 N. E. (2d), 160; *Makley* v. *State*, 49 Ohio App., 359, 197 N. E. (2d), 339.

Furthermore, the commission of a murder or other sensational crime inevitably results in widespread publicity which attracts the interest of the reading and listening public so that prospective jurors are bound to have some knowledge of the alleged crime. Some jurors gain fixed opinions; others, impressions which may or may not be removed; others have only slight information concerning the innocence or guilt of the accused. The really important factor is whether a fair and impartial jury can be obtained in the county in which the offense is alleged to have been committed. Upon the record made upon the motion for a change of venue, we find no abuse of discretion on the part of the trial court denying such motion.

It has been said that the best test as to whether prejudice against the accused exists in the community is the examination of the jurors on the *voir dire*. *Townsend* v. *State*, 17 C. C., (N. S.), 380, 25 C. D., 408; *Johnson* v. *State*, 6 Ohio Law Abs.,

---

[1] This opinion was rendered prior to the decision of the Supreme Court in *State* v. *Sheppard*, 165 Ohio St., 293.

707; *State* v. *Smith,* 16 N. P. (N. S.), 535, 24 O. D. (N. P.), 476. This statement, however, is open to doubt. Since the statute accords the defendant a substantial right, the question should be determined upon the submission of adequate evidence in support thereof at the hearing on the motion. Of course, should it develop upon the *voir dire,* from an examination of a large number of prospective jurors, that a fair and impartial jury can not be secured, the motion then could well be renewed and granted. Nevertheless, we have examined with care the record upon the *voir dire,* consisting of some 300 pages. It reveals that fifty-two prospective jurors were excused for cause because they had formed fixed opinions from reading articles or from discussions with acquaintances. Five jurors were excused for disbelief in capital punishment; six were excused on account of age or health; and four because they had been or were represented by counsel.

Scrupulous care was exercised by the court during the *voir dire.* Excepting the one called for examination, prospective jurors were excluded from the court room. Jurors excused were admonished not to talk about their experience or to relate the ground upon which they were excused. Each of the jurors seated was subjected to extensive cross-examination by counsel as well as the court, and was accepted only upon the announcement of defense counsel that he had no challenge for cause. No challenge for cause was overruled. Peremptory challenges were not exhausted. Most of the twelve regular jurors and two alternate jurors had slight knowledge of the circumstances. Several of them had formed undisclosed opinions, which they testified would not influence them in the discharge of their duty.

Under such circumstances, it would have been futile for counsel to have again moved for a change of venue at the conclusion of the *voir dire* and before the jury was sworn. So far as the record discloses, the defendant was accorded a fair and impartial jury of his peers in the county in which the offense was alleged to have been committed.

Upon the state attempting to introduce evidence of admissions or confessions, objection was made by the defendant and an extensive examination, covering 140 pages, was had in the

absence of the jury. Suffice it to say, there was no evidence tending to show the use of force or undue persuasion exerted upon the defendant, incident to obtaining his confession. At the conclusion of the *voir dire* examination, the court properly decided that the confession was voluntary, but in his general charge submitted the question for the consideration of the jury.

Upon defendant taking the stand on his own behalf, he admitted the killing, but related the story in somewhat different detail in a somewhat fantastic effort to show self-defense. Self-defense was likewise submitted to the jury for its consideration. We agree with the contention of counsel for the defendant that defendant's statements in support of his contention of self-defense are germane to the question of premeditation, but since the jury was fully instructed upon this phase of the case, there was no prejudice to the defendant.

The jury retired at 1:45 p. m. and at 4:30 p. m. returned to the courtroom and inquired through the foreman: "In first degree, with mercy, is it possible for parole?" In reply, the court stated: "Punishment rests with the court, as provided by law. Except that in the event of a conviction of first degree, you may, in your discretion, recommend mercy. In which event the punishment then is life imprisonment. That is the extent that you can consider punishment. I am sorry that is the extent of the matter of law which I can give in answer to your inquiry. * * * You are further instructed not to indulge in speculation or call upon your own individual opinions with reference to the matter which you inquired of."

In the general charge, the court had instructed the jury that the question of recommendation of mercy, if it found the defendant guilty of murder in the first degree, is a matter which the law leaves entirely to the jury's sound discretion. The jury returned its verdict at 5:30 p. m.

Other assignments of error in this appeal are found not well taken. The defendant was accorded a fair trial.

*Judgment affirmed.*

DEEDS, J., concurs.

Conn, J., concurring. I concur in the affirmance of the judgment of the Common Pleas Court. In this case, the record discloses that the jury regularly returned a verdict of guilty against defendant, as charged, at the conclusion of a fair trial in which the accused was accorded the full protection of his rights under the Constitution and the law of the land.