Bell, J.
Murder and mystery, society, sex and suspense were combined in this case in such a manner as to intrigue and captivate the public fancy to a degree perhaps unparalleled in recent annals. Throughout the preindictment investigation, the subsequent legal skirmishes and the nine-week trial, circulation-conscious editors catered to the insatiable interest of the American public in the bizarre. Special seating facilities for reporters and columnists representing local papers and all major news services were installed in the courtroom. Special rooms in the Criminal Courts Building were equipped for broadcasters and telecasters. In this atmosphere of a “Roman holiday” for the news media, Sam Sheppard stood trial for his life.
The record of that trial covers 7,308 pages. And counsel devote 1,097 pages of briefs to a discussion of 29 alleged errors assigned by the defendant as having been committed by the Court of Appeals in affirming the judgment of the Court of Common Pleas. These 29 errors were combined into seven questions of law, only three of which were stressed in oral argument. They are:
1. Was the atmosphere in Cleveland as a result of the widespread publicity attendant upon this trial such as to require the trial court to grant a change of venue?
2. Did the permitting of jurors during their deliberations *295 to communicate by telephone with members of their immediate families require reversal of the judgment on the verdict reached by the jury?
3. Is there sufficient evidence to have warranted submission of the case to the jury, and, if so, is there sufficient substantial evidence to justify the verdict rendered?
The law does not require this court to be so naive as to refuse to recognize the great amount of publicity accorded this case from the time of the discovery of the crime up to the present time. Every development has been given the “full treatment” by the press, radio and television. The interest in each phase of the case has not been confined to the Cleveland area or to Ohio. Syndicated columns and news agency reports have made the case almost as well known in every community of the nation as it is in Cleveland.
It should be borne in mind, however, that the legal question presented to us is whether the defendant was accorded a fair constitutional trial by an impartial jury which could decide the issues of fact solely upon the consideration of the evidence in the light of the law given it by the court. That question is not to be decided on the volume of the publicity or the tendency such publicity may have had in influencing the public mind generally as to the defendant’s guilt or innocence.
At the outset of the trial, in response to defendant’s motion for change of venue, the trial court said:
“The motion for change of venue will be held in abeyance, and we will proceed at 1:15 this afternoon in an effort to determine whether or not we can secure a fair and impartial jury. If we are not able to do that, there will be no question in this court’s mind at all but what this case ought to go out of Cuyahoga County, whatever may be the effect of that.”
At the conclusion of the impaneling of 12 jurors, the motion for change of venue was renewed (for the third time), at which time, in overruling the motion, the trial court said: “That the best evidence in the world is the effort to select a jury, and what we get here in a picture that has taken almost two weeks of time. The court is thoroughly satisfied that we have here a fair and impartial group of people to try this case, and I doubt if under any conditions at any time anywhere in *296 this state you could have a better looking group of people and a more intelligent group of people, as a whole, to try a case of this kind, and the court is thoroughly satisfied that they are a group of fair and impartial people who can properly try this case under the guidance of the court, and I hope we will be able to give them that in the manner that it ought to be given.”
The same motion, advanced for the same reason, was renewed on five other occasions during the trial, and the trial court in each instance overruled the motion.
We believe the trial court was justified in those rulings. In Townsend v. State, 17 C. C. (N. S.), 380, 25 C. D., 408, affirmed without written opinion in 88 Ohio St., 584, 106 N. E., 1083, it is said:
“The examination of jurors on their voir dire affords the best test as to whether or not prejudice exists in the. community against the defendant; and where it appears that the opinions as to the guilt of the defendant of those called for examination for jurors are based on newspaper articles and that the opinions so formed are not fixed but would yield readily to evidence, it is not error to overrule an application for a change of venue.”
For example, in Richards v. State, 43 Ohio App., 212, 183 N. E., 36, it was held that the exercise of the right to order a change of venue lies in the trial court’s discretion, and that a refusal to order a change of venue without prejudice until it can be determined whether a fair and impartial jury can be impaneled is not an abuse of discretion. See, also, Dorger v. State, 40 Ohio App., 415, 179 N. E., 143; State v. Stemen, 90 Ohio App., 309, 106 N. E. (2d), 662; State v. Deem, 154 Ohio St., 576, 97 N. E. (2d), 13.
If the jury system is to remain a part of our system of jurisprudence, the courts and litigants must have faith in the inherent honesty of our citizens in performing their duty as jurors courageously and without fear or favor. Of the 75 prospective jurors called pursuant to this venire only 14 were excused because they had formed a firm opinion as to the guilt or innocence of the defendant. A full panel was accepted before this venire was exhausted, and defendant exercised but five of his allotted six peremptory challenges.
In the light of these facts, and particularly in the light of *297 the fact that a jury was impaneled and sworn to try this ease fairly and impartially on the evidence and the law, this court can not say that the denial of a change of venue by the trial judge constituted an abuse of discretion.
Defendant contends that he was prejudiced in this case by the actions of two officers of the court, in whose charge the jury was committed during its deliberations, in permitting some members of the jury to make unmonitored telephone calls in violation of Section 2945.33, Revised Code, which reads as follows :
“When a cause is finally submitted the jurors must be kept together in a convenient place under the charge of an officer until they agree upon a verdict, or are discharged by the court. The court may permit the jurors to separate during the adjournment of court overnight, under proper cautions, or under supervision of an officer. Such officer shall not permit a communication to be made to them, nor make any himself except to ask if they have agreed upon a verdict, unless he does so by order of the court. * * * ’ ’
It is conceded that no authorization for such telephone calls was given by the court.
At the conclusion of each day’s deliberation, the members of this jury were housed in the Carter Hotel, under the supervision of two court bailiffs. The record reveals that the telephones in the hotel rooms occupied by individual jurors had been “cut out.” However, some of them were permitted to make calls on the telephone in the room of one of the bailiffs.
In connection with a motion for a new trial, the record discloses the following cross-examination of one of the bailiffs by counsel for defendant:
‘ ‘ Q. Did you make the calls, or did the jury make the calls ? A. No. The jury made the calls, and I sat in the chair right alongside the telephone. ’ ’
On redirect examination, the testimony was as follows:
“Q. Mr. Bailiff, what was the purpose of the calls that the jurors made in your presence?
( 6 # * #
“A. Well, they were made to their husbands and wives, and those that had children, they talked to the children.
“Q. Was there any conversation whatsoever about this *298 case or their deliberations? A. Not one word, Mr. Parrino.”
Counsel for defendant rely upon State v. Adams, 141 Ohio St., 423, 48 N. E. (2d), 861, 146 A. L. R., 509, as authority for their contention that the action of the bailiff in permitting these telephone calls constituted error prejudicial to the defendant. They cite the third paragraph of the syllabus of that case, which reads:
‘ ‘ The violation by a court officer in charge of a jury of Section 13448-1, General Code [Section 2945.33, Revised Code], to the effect that he shall not communicate with a jury in his charge or custody except to inquire whether it has reached a verdict, will be presumed to be prejudicial to a defendant against whom, after such communication, a verdict is returned by such jury.”
A mere reading of the following fourth paragraph of the syllabus of the Adams case should be sufficient to distinguish that case from the present one:
“Where a court bailiff, on being informed by the jury during its deliberations that it could not agree, stated to it: ‘You can’t do that. You must reach a decision if you have to stay here for three months,’ there is a violation of the statute which is prejudicial to a defendant against whom, following such declaration, a verdict is returned by the jury.”
The case of Emmert v. State, 127 Ohio St., 235, 187 N. E., 862, 90 A. L. R., 242, although not cited by defendant, might also be authority for the proposition that misconduct of a bailiff is ground for reversal. That case, however, is also readily distinguishable from the present one. In the Emmert case the officer in charge of the jury, at a time when it was not actually in its deliberative sessions, said to certain members of the jury: “My God, you are all wet. Judge Stahl expects you to return a verdict of guilty and if you don’t it will be just too bad.” Other remarks of a similar nature to the effect that the jury had to reach a verdict were made by the bailiff.
In situations such as those in the Adams and Emmert cases, it is easy to presume prejudice to the defendant as a result of the conduct of the bailiff. Can the same be said of the conduct of the bailiffs here in permitting jurors, who for several days and nights had been sequestered and unable to see or hear from *299 their husbands, wives or children, to telephone those members of their families? We do not think so. There is, on the contrary, every reason to believe that assurances of the health and welfare of their loved ones would tend to ease the jurors’ minds as to personal matters and would make them better, more conscientious jurors. Time after time, the members of this jury were instructed by the court not to communicate with anyone concerning this case or permit anyone to communicate with them about it. We must assume they followed the court’s instructions. No complaint is made that they disregarded these instructions every night for some seven weeks that they were allowed to go home at the close of each day’s session of the trial. It is difficult to visualize a juror who will follow a court’s instruction during the many hours he spends each evening and week end with his family and then deliberately disregard that instruction in a few brief moments he speaks to a member of his family on the telephone in the presence of a bailiff.
The law of Ohio is that no judgment of conviction shall be reversed in any court for any cause unless it appears affirmatively from the record that the defendant was prejudiced thereby or was prevented from having a fair trial. Section 2945.83, Revised Code. There is no such affirmative showing of prejudice here, and this court will not presume a prejudice as a matter of law from the fact that some of the jurors made telephone calls to members of their immediate families.
The answer to the third question propounded herein has required a review of the evidence presented in the trial of the ease. That review has been made with no attempt to retry the issues of fact. Our concern has been solely whether there is sufficient evidence to have warranted the submission of the case to the jury and whether there is sufficient substantial evidence to support the verdict rendered. In our opinion the record in this case requires that both questions be answered in the affirmative.
Whether the members of this court would have drawn the same inferences from the evidence presented in this trial is of no consequence. As this court said, in State v. Petro, 148 Ohio St., 473, 501, 76 N. E. (2d), 355, 5 A. L. R. (2d), 425:
“It is the minds of the jurors and not the minds of the *300 judges of an appellate court that are to be convinced. The jurors see the witnesses and observe their demeanor. The credibility to be given to each and all of these witnesses and to part or all of their respective testimony is for the jury. The question to be determined by an appellate court is: Does the record contain evidence from which a jury would be justified in concluding that the accused was guilty beyond a reasonable doubt?”
The evidence in this case is largely circumstantial. In such a situation, it is conceded that the law of Ohio requires that the facts upon which a verdict of guilt is based must be established beyond a reasonable doubt. The facts so established must be entirely irreconcilable with any claim or theory of innocence and admit of no other hypotheses than the guilt of the accused. See Carter v. State, 4 Ohio App., 193; 15 Ohio Jurisprudence (2d), 630, Section 462.
The law was so stated to the jury by the trial judge, when he said in his general charge:
“It is for you to determine how much of circumstantial evidence adduced in this case is credible and what fair inferences are to be drawn from it. You are instructed that any inference drawn must in every instance be drawn from a proven or established fact. In other words, you are not to draw a second or further inference upon an inference but that is not to say that you are confined to drawing only one inference from one fact. There is no limit to the number of independent inferences that may be drawn from a fact. The rule is simply that every inference must be drawn from, and based on, a fact and that once having drawn an inference one may not draw a second inference from the first.
“It is necessary that you keep in mind, and you are so instructed, that where circumstantial evidence is adduced it, together with all other evidence, must convince you on the issue involved beyond a reasonable doubt and that where circumstantial evidence alone is relied upon in the proof of any element essential to a finding of guilt such evidence, together with any and all other evidence in the case, and with all the facts and circumstances of the case as found by you must be such as to convince you beyond a reasonable doubt and be consistent only *301 with the theory of guilt and inconsistent with any theory of innocence. If evidence is equally consistent with the theory of innocence as it is with the theory of guilt it is to be resolved in favor of the theory of innocence.”
Under that instruction, which we believe to be a proper one on circumstantial evidence, where a jury finds there is any reasonable hypothesis of innocence, after considering all the evidence, it is its duty to acquit. If, however, the jury finds, after full deliberation, there is no reasonable hypothesis of innocence based on the facts as it finds them to be, and the facts which it finds are irreconcilable with any reasonable hypothesis other than guilt of the accused, then a verdict of guilty is required.
The facts were presented to 12 qualified jurors sworn to well and truly try the issues between the state of Ohio and Sam H. Sheppard. In what was obviously a careful, complete and correct charge, Judge Blythin instructed that jury as to the law applicable to those facts. In such a situation, the following words of Mr. Justice Holmes, in Aikens v. State of Wisconsin, 195 U. S., 194, 206, 49 L. Ed., 154, 25 S. Ct., 3, are appropriate :
“But it must be assumed that the constitutional tribunal does its duty and finds facts only because they are proved.”
We have carefully examined the other errors assigned and find none, either in the admission or rejection of evidence or in the instructions of the court, prejudicial to the defendant.
The judgment of the Court of Appeals is, therefore, affirmed.

Judgment affirmed.

Matthias, acting C. J., Montgomery, Zimmerman and Stewart, JJ., concur.
Hart and Taet, JJ., dissent.
Matthias, J., sitting, in the place and stead of Weygandt, C. J., pursuant to Section 2503.04, Revised Code.
Montgomery, J., of the Fifth Appellate District, sitting by designation in the place and stead of Matthias, J., pursuant to Section 2, Article IV of the Constitution.