THE STATE OF OHIO, APPELLEE, *v.* SHANK, APPELLANT.

292

(No. 6857—Decided March 13, 1962.)

*Mr. Earl W. Allison*, prosecuting attorney, and *Mr. Fred W. Newsom, Jr.*, for appellee.

*Mr. Henry Clay Scott*, for appellant.

BRYANT, J.   John W. Shank has appealed to this court on questions of law from the judgment of the Court of Common Pleas of Franklin County, finding him to be an habitual criminal and sentencing him to life imprisonment in the Ohio Penitentiary.

Shank was indicted by the Grand Jury of Franklin County on February 28, 1961, and this indictment will hereinafter be referred to as the 1961 indictment.   It contains a single count which describes therein four felonies alleged to have been committed by Shank and alleges that Shank pleaded guilty to all four, thereby bringing him under the terms of the habitual criminal statutes.   Sections 2961.11, 2961.12 and 2961.13 of the Revised Code authorize life imprisonment for persons convicted of any of the approximately two dozen offenses enumerated, including burglary and grand larceny.

The four offenses described in the 1961 indictment, the places where committed, the dates of the guilty pleas and the sentences imposed are as follows:

1. Grand larceny, Franklin County, Ohio, October 27, 1941, Ohio State Reformatory, Mansfield, Ohio.

2. Burglary, third degree, and grand larceny, second de-

gree, Erie County, New York, May 21, 1948, sentence suspended, placed on probation (on grand larceny 2d degree only).

3. Burglary and grand larceny, Franklin County, Ohio, November 18, 1948, Ohio Penitentiary.

4. Burglary, Franklin County, Ohio, November 4, 1953, Ohio Penitentiary. (See state's exhibits 1 through 8.)

Section 2961.11, *supra*, enumerates the various offenses to which the habitual criminal law applies, and burglary and grand larceny are among those listed. As above noted, the 1961 indictment alleges that Shank pleaded guilty to two indictments charging burglary, one charging grand larceny and one charging grand larceny, second degree.

Section 2961.12 of the Revised Code, under which the 1961 indictment was drawn, is as follows:

"A person convicted of any of the offenses specified in Section 2961.11 of the Revised Code, who has been three times previously convicted of any of the said offenses, separately prosecuted and tried therefor either in this state or elsewhere, shall be adjudged an habitual criminal and shall be sentenced to imprisonment for the term of his natural life. Any of such convictions which result from or are connected with the same transaction, or result from offenses committed at the same time, shall be counted for the purposes of this section as one conviction."

Section 2961.13, *supra*, so far as here applicable, provides as follows:

"If at any time either before or after sentence, it appears that a person convicted of one of the felonies enumerated in Section 2961.11 of the Revised Code, has previously been convicted of any of said felonies, the prosecuting attorney of the county in which such last conviction was had shall cause an indictment to be returned charging such person with such previous convictions.

"The court in which such last conviction was had shall cause the said person, whether confined in prison or not, to be served with a copy of such indictment and to be brought before such court. Such court shall inform the accused of his right to be tried as to the truth thereof, and shall require the accused to say whether he is the same person as charged in such previous convictions set forth in such indictment. If the accused says he is not the same person, or remains silent, the court shall enter a

plea of not guilty and a jury shall be impaneled to inquire whether the accused is the same person, as charged in such previous convictions set forth in said indictment. The accused may waive trial by jury and consent to be tried by the court. The usual procedure in the trial of criminal cases shall be followed in the impaneling of such jury and the trial under such indictment. If the accused pleads guilty to such indictment, or if the jury finds him guilty, or if the court finds him guilty after waiver of a jury, the court shall sentence him to the punishment prescribed in Section 2961.11 or 2961.12 of the Revised Code, as the case may be, and shall vacate the previous sentence, if sentence has been imposed, deducting from the new sentence all time actually served by the defendant on the sentence so vacated.''

In this case, the record discloses that Shank not only pleaded not guilty to the 1961 indictment but, prior thereto, several times attacked the sufficiency of the indictment or the validity of the proceedings. It will be noted that Section 2961.13, *supra*, specifically grants to the accused the right to a jury trial upon any charge of fourth conviction and provides that ''the usual procedure in the trial of criminal cases shall be followed in the impaneling of such jury *and the trial under such indictment.*'' (Emphasis added.)

On March 3, 1961, counsel for Shank filed a motion to quash the indictment on the ground that the allegations which it contained do not constitute an offense. At the same time a plea in abatement was filed on behalf of Shank challenging the jurisdiction of the court over him and alleging that Section 2961.12, *supra*, under which the indictment was drawn, is unconstitutional. The court overruled both pleadings.

On June 7, 1961, counsel for Shank, in addition to the plea of not guilty entered for Shank, made an additional attack upon the indictment, pleading, first, former conviction, second, once in jeopardy, and third, *res judicata.*

It was the contention of the defense that the habitual criminal statutes do not create a new offense but merely authorize a heavier penalty upon conviction of the fourth offense, and that Shank previously had been prosecuted and punished for the alleged fourth offense. The three pleas were overruled in their entirety by the trial court.

It would appear that counsel for Shank sought to contest

the charge contained in the indictment by all appropriate means and that the trial court was under the obligation to follow "the usual procedure in the trial of criminal cases," both as to the selection of the jury and the trial which followed. If the defendant at any time during the trial made any change whatsoever in his plea of not guilty, we have been unable to find any evidence of it in the record.

On June 15, 1961, the defendant was placed on trial before a judge and jury in the court below. Three witnesses were called on behalf of the prosecution and twelve exhibits were introduced, after which the prosecution rested its case and counsel for Shank moved for a directed verdict on the ground of failure of the state to prove the alleged New York conviction, which was overruled. The defense then rested and, after arguments and the charge by the court, the jury retired and later returned a verdict finding "John W. Shank, guilty of habitual criminal as he stands charged in the indictment."

On the same day, to wit, June 15, 1961, that the guilty verdict was returned, the trial court sentenced Shank to the Ohio Penitentiary "for the balance of his life." Also on that date a motion for a new trial was filed. The motion was overruled on June 20, 1961, at which time counsel for Shank filed a notice of appeal, and the case was docketed in this court.

On July 26, 1961, this court, on application of defendant, dismissed the appeal without prejudice and remanded the cause. The record does not affirmatively show the reason for the remand but it is noted that the trial court, on June 15, 1961, at the time of imposing the life sentence upon Shank had neglected to vacate and set aside the previous judgment imposed on November 4, 1953, of an indeterminate sentence of one to seven years in the Ohio Penitentiary. In any event, upon the return of the case to the court below a stipulation of facts was entered into, which is as follows:

"It is hereby stipulated and agreed by and between the attorneys for the state of Ohio and the defendant, John W. Shank as to the following facts:

"1. Defendant, John W. Shank, was sentenced to the Ohio Penitentiary on November 4, 1953, for a crime of burglary, Case No. 33853, Court of Common Pleas, Franklin County, Ohio.

"2. Defendant was paroled from the Ohio Penitentiary for the above offense on November 20, 1958.

"3. Defendant was given a final release from parole on December 1, 1959, and discharged by virtue of the above offense.

"4. Defendant has not been convicted of any offense enumerated in R. C. 2961.11 since November 4, 1953."

The trial court, then, by journal entry, set aside and vacated the judgment imposing sentence upon Shank and overruling his motion for a new trial. It then, for a second time, imposed on Shank a sentence to life imprisonment, this time setting aside the judgment and sentence entered on November 4, 1953, and again, considering the motion for a new trial in light of the stipulation above referred to, overruling such motion.

Thereafter, defendant filed a second notice of appeal. A bill of exceptions was allowed and signed by the court, a brief and assignment of errors was filed in this court on August 18, 1961. A receipt was attached to the brief signed by counsel for the state, indicating that a copy thereof had been served on such counsel on August 18, 1961.

The case came on for argument before this court on January 25, 1962, more than five months after the filing of Shank's brief, but as of that date no brief in opposition to Shank's brief had been filed. A promise made at the time of argument that such answer brief would be filed within five days after oral argument was not fulfilled, either in five days after argument or in the month which followed, and the only brief before us as this is written is that filed by Shank.

The first assignment of error is as follows:

"The court erred in overruling defendant's motion to quash indictment and plea in abatement to the indictment."

Counsel for Shank, with reference to this assignment, in his brief states the question as follows:

"The real issue to be decided here is: May the state, after a defendant has entered a plea of guilty to a charge of burglary, served five years, been placed on parole, served out the parole, and been finally discharged from official custody, indict the defendant under the habitual criminal statutes and impose a second penalty for the same offense?"

This is followed by an argument that Section 2961.12, *supra*. does not create a new crime but instead increases or makes more

severe the punishment in case of the fourth conviction. Reliance is placed upon 24B Corpus Juris Secundum, 429, Criminal Law, Section 1958, and *State* v. *Cotz*, 94 Wash., 163, 161 P., 1191, the latter case placing a limitation upon the imposition of the more severe sentence to the time after conviction and before judgment and sentence. This holding of course is directly contra to the holding in the case of *State* v. *Sudekatus* (1943), 72 Ohio App., 165, where the court held, as disclosed by the first paragraph of the syllabus, as follows:

"1. Under the habitual criminal act, Sections 13744-1 *et seq.*, General Code [Sections 2961.11 *et seq., Revised Code*], a person who has served his entire time under the fourth conviction may be indicted and convicted as a habitual criminal."

It may be well contended that the holding in the *Sudekatus case* was in the nature of an obiter dictum, as the court ultimately held one of the prior convictions was not proved and the habitual criminal proceedings failed. The *Sudekatus case* was decided by the Court of Appeals of the Sixth Appellate District, sitting in Lucas County, and has been cited with approval by the Court of Appeals of the Second Appellate District in the case of *In re Sims* (1950), 61 Ohio Law Abs., 305.

We find it difficult to accept either the reasoning or the result reached in the *Sudekatus case, supra*. In addition to the argument advanced on behalf of counsel for Shank, we note that under the provisions of Section 2965.17 of the Revised Code, it is expressly provided that when a prisoner has either served his maximum term or has his final release by the Pardon and Parole Commission of this state, he shall be restored to the rights and privileges forfeited by his "conviction." Section 2965.17, *supra*, provides in part as follows:

"A prisoner who has served the maximum term of his sentence or who has been granted his final release by the commission, *shall be restored to the rights and privileges forfeited by his conviction*." (Emphasis added.)

It appears that there can be two interpretations placed upon Sections 2961.12 and 2965.17, *supra*. In this case, Shank was sentenced for the alleged fourth offense on November 4, 1953, and the state waited until February 28, 1961, a period of seven years and nearly four months before initiating, by indictment, the proceedings under the habitual criminal law. Thus, the

state waited during (1) the entire five years and twenty-six days during which time Shank was imprisoned in the Ohio Penitentiary, (2) during more than one year which followed, while he was on parole, and (3) an additional fifteen months, while he was at large, before it elected to act. If the *Sudekatus case, supra,* correctly states the law, there is no limit in time, and the state conceivably could wait another twenty years and then elect to subject Shank to extra punishment for the 1953 violation. As we view it, such an interpretation recognizes a conflict between the provisions of Section 2961.12, *supra,* and Section 2965.17, *supra.*

At the time the final release was given, the only lawfully imposed sentence was that of one-to-seven years. It is apparent, therefore, that the Pardon and Parole Commission, in granting the release, was acting fully within the authority granted to it by law.

It is our duty, if possible, to give effect to both statutes and it would seem that the proper interpretation would be to construe these two sections *in pari materia,* giving effect to both of them. Under this construction, the final release under Section 2965.17, *supra,* would mean just what it says and would indirectly place a limitation upon the time in which such habitual criminal proceedings might be begun.

Such interpretation would not hamper or impair the state. If it be applied to this case, the state would have approximately seven years in which to decide whether to prosecute Shank under the habitual criminal statute.

But it is not, in our opinion, necessary to determine that question in order to decide the question raised by the first assignment of error, and we therefore expressly refrain from so deciding it. This is for the reason that in our opinion the indictment contains defects which are fatal and which placed an obligation on the court below to sustain the motion to quash because of insufficiency of the allegations contained therein.

As we view it, it was necessary that the indictment allege that there had been four prior convictions of one or more of the offenses enumerated in Section 2961.11, *supra,* and yet nowhere in the entire 1961 indictment is it alleged that there had been any convictions, past or present. The most that the indictment says is that Shank pleaded guilty to certain offenses. That, of

course, is one of the steps which may form the basis for a conviction just as a verdict by a jury of guilty may be the foundation for a judgment of conviction. Both may be in proper cases refused or set aside and frequently are. The statute uses the term convictions which is not the same as a guilty plea or a guilty verdict.

It must be borne in mind that this is a criminal case and the rules of strict, even though reasonable, interpretation must apply. Being of the opinion that a guilty plea is not the equivalent of a conviction, we also conclude that the court below committed prejudicial error when it overruled defendant's motion to quash.

In the case where an ordinance of the city of Columbus—Section 101.99 (c), 1959 Columbus Code—which closely corresponds to Section 753.07 of the Revised Code, drastically increased the penalty from one year to three years, where prior to the fourth violation the defendant has been *convicted, sentenced* and *imprisoned,* this court held failure to allege that the defendant was convicted was a fatal defect. See *Harvey* v. *Myers, Supt.,* 110 Ohio App., 469. Also see *Ex parte Briggs,* 86 Ohio App., 215, and *Hamilton* v. *Russell,* 54 Ohio Law Abs., 57.

It follows in our opinion therefore that the first assignment of error is well taken because of the fatal omission above referred to and must be sustained.

We have given careful consideration to the second assignment of error objecting to the overruling by the trial court of the pleas of former conviction, once in jeopardy and *res judicata,* and having reached the conclusion that no prejudicial error was committed by the court, it follows that in our opinion the second assignment of error is not well taken and must be overruled.

The third assignment of error is as follows:

"The court erred in admitting state's exhibit number 4 into evidence over defendant's objection."

State's exhibit No. 4 is a cardboard, approximately eight inches square, bearing the printed heading, "Department of Police, Buffalo, N. Y. Bureau of Identification." It is ruled on what appears to be the face or front thereof and contains certain wording and approximately 27 lines, and is designed to provide space for a detailed description of a defendant in a

criminal case, both physically and as to past and present criminal violations. The other side is for fingerprints.

Exhibit No. 4 contains the name, not of John W. Shank, defendant-appellant herein, but of John Sutton, and both a front and side view of Sutton as he is alleged to have appeared on February 16, 1948. On the reverse side of the card there are spaces for 20 fingerprints, two for each finger and thumb on both hands. (Rolled prints or prints taken one at a time for the fingers and thumbs on both hands are at the top, while impression prints taken simultaneously of the fingers and thumbs of both hands appear at the bottom of the card.)

This exhibit was identified by Francis P. Talty of Buffalo, New York, who was Chief of the Bureau of Identification of the Police Department in Buffalo, New York, who testified that it is now, and was in 1948, his duty "to compile and file records and take fingerprints and photographs."

Counsel for Shank argues that the record does not indicate "the mode of preparation or of anyone who supervised the actual making of the record." Defendant relies on the case of State v. Phillips (1951), 90 Ohio App., 44, the first paragraph of the syllabus of which is as follows:

"The Uniform Evidence Act relating to business records applies to criminal as well as civil procedure."

While it is true that someone other than Talty actually took the prints, it is also clear that Talty, as Chief of the Bureau of Identification, and having the duty to compile and file records, has qualified himself as the lawful custodian of the record in question. It follows, therefore, in our opinion that the third assignment of error is not well taken and must be overruled.

The fourth and fifth assignment of errors relate to the charge of the court and will be considered together. These claimed errors are as follows:

"4. The court erred in instructing the jury that the sole question for the jury was the New York conviction.

"5. The court erred in stating in the presence of the jury that the defendant, in a motion previously filed, had admitted the 1953 conviction alleged in the indictment."

Although there were four separate felonies described in the indictment, the court brushed aside the necessity of proof on three of them and stated that the only question the jury need to

determine was with reference to the offense allegedly committed in Buffalo. The language used by the court in the charge is as follows:

"Now, there is only one question really for you to decide in determining whether the defendant is guilty or not. Was the charge in New York under the name of John Sutton a charge against this defendant? If it was, then he is guilty as charged in the indictment. But you must find from the evidence that the state has proven that fact beyond a reasonable doubt."

When the court had completed giving the charge, counsel for the defendant interposed objections and the following statements were made:

"The Court: Anything further, Mr. Scott?

"Mr. Scott: I think, if the court please, as to the indictment in New York, the court made reference to the fact that he entered a plea of guilty to the indictment, but it was not to burglary and larceny, as the indictment alleged, but that he pled guilty to larceny in the second degree.

"The Court: That is right; larceny in the second degree.

"Mr. Scott: And we also request the court to instruct the jury that the state must prove all four convictions, not necessarily the New York case only.

"The Court: Yes. They have to prove all four convictions. But there has been no dispute about the three here in Columbus. As a matter of fact, you admit the last one in 1953 in your motion. That is in the record. But the state must prove all four convictions, of course.

"If there is nothing further, then the jury will retire, and take the exhibits.

"The jury thereupon retired and proceeded to its deliberations.

"* * *

"Mr. Scott: I want an exception in the record to the court's charge, upon his comment concerning the admission of the fourth conviction."

A careful search of the record has failed to disclose any action by the defendant or his counsel whereby he abandoned his plea of not guilty. It has been previously pointed out that under Section 2961.13, *supra*, the trial under an habitual crimi-

nal indictment is required to conform to "the usual procedure in the trial of criminal cases."

No authority has been pointed out under which the filing of the various motions and pleas constitutes an admission of vital facts for the purpose of the trial on the merits.

The question before the jury was whether or not Shank had been four times convicted. The statement therefore was incorrect, highly prejudicial, and deprived the defendant of a fair trial. The further statement that "there has been no dispute about the three here in Columbus" and that Shank admits "the last one in 1953 in your motion" also constitutes prejudicial error. The record discloses that throughout the trial the defendant stood on his plea of not guilty, and by that he disputed every relevant allegation contained in the indictment. So far as the jury was concerned, the defendant admitted no allegation contained in the indictment and it was incumbent upon the state to prove every material fact.

The instructions given by the court were incorrect and no effort was made to withdraw from the jury's consideration that which was erroneous. In the case of *Koenig* v. *State* (1929), 121 Ohio St., 147, at page 155, there appears the following:

"This court has several times held that, where there is an erroneous charge given, which is not withdrawn from the consideration of the jury, the error cannot be cured by correctly stating the law upon the same subject in some other part of the charge. * * *"

For many years, if the value of the property, which was stolen, was $35 or more, the offense in Ohio was grand larceny, while if the value was less than $35, the offense was petit larceny. (See former Section 12447, General Code.) This section was amended in 124 Ohio Laws, 466, effective September 10, 1951, to substitute $60 in place of $35. The alleged offense in New York State took place in 1948 and the instruction should have told the jury what the definition of grand larceny was in Ohio at that time in order to determine whether the proof offered by the state supported that charge. This the court failed to do.

For the reasons above set forth, it is our opinion that the fourth and fifth errors assigned are well taken and must be sustained.

The sixth and seventh errors assigned will be considered together, and they are as follows:

"6. The verdict is not sustained by the evidence and is contrary to law.

"7. The court erred in overruling defendant's motion for a directed verdict at the conclusion of the state's evidence."

It was the duty of the state to prove by evidence convincing the jury beyond a reasonable doubt that Shank had four times been convicted of offenses within the terms of Section 2961.11, *supra,* which included burglary and grand larceny. The objections of counsel for the defense under the sixth assignment of error in the brief are: (1) The state failed to show that New York's crime of grand larceny, second degree, was the equivalent of Ohio's crime of grand larceny, and (2) that the person bearing the name of John Sutton shown on exhibit No. 4 and exhibit No. 5 was the defendant in this case.

So far as proving the wording or content of the New York statute dealing with grand larceny, second degree, the record is silent. It is true that when Chief Talty of the Bureau of Identification of the Buffalo, New York, Police Department was on the stand at the trial on June 15, 1961, he was asked a question as to what is grand larceny, second degree, in New York as of the time of the trial, that is, in 1961.

There is not one word of testimony which sought to establish, either by training or experience, that this witness had or claimed any knowledge whatsoever with respect to the laws of the state of New York, either in 1961 or 1948, and he was not even asked the question as to what constituted grand larceny in the second degree in New York more than thirteen years prior to the time of trial, namely, on February 3, 1948, when one John Sutton was alleged to have committed that crime in Erie County, New York.

Another important defect in the case presented by the state was the total absence of any evidence from which it was shown or inferred that the man on trial, the defendant in this case, was the same person as the one described in the various exhibits. If, in fact, the man on trial on three previous occasions had been brought before the court below, certainly there was some deputy sheriff, policeman, prison guard, jailer, or perhaps even an alleged victim of one of the crimes, who could have testified that

the man in the courtroom was the same person as the defendant in one or more of the several offenses described in the 1961 indictment. Even connecting the defendant in the courtroom with one of the offenses would have helped, but there was no such evidence.

There is another defect in this record to which attention should be called, and that is that there are material and important differences in the physical descriptions of John Sutton, defendant in the New York case, and John W. Shank, alleged defendant in three cases in Ohio.

As previously pointed out, the state of Ohio introduced criminal identification cards in connection with each of the four alleged violations, each bearing front and side view pictures, names, addresses and physical criminal data on one side and fingerprint records on the other.

We shall list the data taken from state's exhibit No. 6 prepared at the Mansfield Reformatory on October 29, 1941; exhibit No. 4 prepared on February 16, 1948, by the Buffalo, New York, police department; exhibit No. 7, prepared at the Ohio Penitentiary on November 20, 1948, and exhibit No. 8 prepared at the Ohio Penitentiary on November 7, 1953, as follows:

|             | Exhibit No. 6 | Exhibit No. 4 | Exhibit No. 7 | Exhibit No. 8 |
|-------------|---------------|---------------|---------------|---------------|
| Crime In    | Ohio          | New York      | Ohio          | Ohio          |
| Name        | John W. Shank | John Sutton   | John Shank    | John Shank    |
| Record Made | 10/29/41      | 2/16/48       | 11/20/48      | 11/7/53       |
| Height      | 5 ft. 11 in.  | 6 ft. 1 in.   | 5 ft. 11 in.  | 5 ft. 11½ in. |
| Weight      | 152 lbs.      | 176 lbs.      | 150 lbs.      | 150 lbs.      |

From what has been set forth above, the affirmative proof offered by the state is that the *name* of the man pleading guilty in New York differed from that shown in the other three cases. Perhaps of even greater importance is the fact that the height of the defendant at the time of his measurement in Ohio was either five feet eleven inches or five feet, eleven and one-half inches, while in New York the heighth of the defendant was six feet one inch. Also of major importance was the fact that the

weight of the defendant three times in Ohio was about the same, either 150 or 152 pounds, while the weight of the defendant in New York was 176 pounds.

This conflict arises in evidence offered by the state. The prisoner shown in exhibit No. 4 in our opinion does not, in either front or side view, resemble the prisoner shown in exhibits Nos. 6, 7 and 8. Furthermore, John Shank, in exhibits Nos. 6, 7 and 8, over a twelve-year period consistently weighed either 150 or 152 pounds, while John Sutton weighed 176 pounds. We also note that John Sutton was two inches taller. These differences were unexplained.

We have examined the eight photographs, four front view and four side view, taken of the defendants in the four cases. Referring to Exhibit No. 4, the photograph was taken in Buffalo, New York, on February 16, 1948, while referring to exhibit No. 7, the photograph was taken at the Ohio Penitentiary in Columbus on November 22, 1948, about nine months apart. As we have stated above, it would appear that the similarities between the New York and the various Ohio photographs were few and the dissimilarities many.

Counsel for defendant also complains that Arnold Fetter of the Ohio Bureau of Criminal Identification and Investigation spent less than ten minutes on the stand in the courtroom in his comparison of the twenty prints shown on exhibit No. 4 made in the New York record with the sixty prints shown on exhibits Nos. 6, 7 and 8 made in Ohio. As we see it, this objection goes to the weight rather than the admissibility of the evidence and might well have been included in an argument to the jury but is not controlling in error proceedings.

For the reasons above set forth, we conclude that the verdict of the jury and the judgment of the court are not sustained by but are contrary to the weight of the evidence, and that the court erred in overruling the motion of the defendant for a directed verdict at the conclusion of the state's case from which it follows that assignment of errors Nos. 6 and 7 in our opinion are well taken and must be sustained.

The eighth error assigned is as follows:

"The court erred in setting aside its judgment entered November 4, 1953, in case number 33853 wherein the defendant

was sentenced to the Ohio penitentiary for the crime of burglary.''

After careful consideration of the eighth assignment of error, we have concluded that this assignment is not well taken and must be overruled and that applies also to the ninth assignment of error described as other errors of law occurring in the trial. We observe that the court in this case imposed a fixed, determinate sentence, to wit, a sentence to life imprisonment in the Ohio Penitentiary, as distinguished from an indeterminate sentence.

In as much as this matter must be referred back to the trial court, we point out here that the law pertaining to indeterminate sentences appears to apply to life sentences for four convictions, hence the sentence should have been general.

Section 5145.01 of the Revised Code provides in part as follows:

''Courts imposing sentences to the penitentiary for felonies, except treason, and murder in the first degree, shall make such sentences general and not fixed or limited in their duration.''

In the case of State v. Hawkins (1954), 97 Ohio App., 477, paragraphs one, three and six of the syllabus are as follows:

''1. All criminal laws shall be interpreted most favorably to the accused and against the state when interpretation is required.''

''3. Under the provision of Section 5145.01, Revised Code, that sentences for all felonies except treason and murder in the first degree shall be 'general and not fixed or limited in their duration,' and 'punishment' of one convicted of murder in the second degree is not imprisonment for life but such imprisonment is only 'until legally released.' ''

''6. Although Section 2901.05, Revised Code, provides that any person guilty of murder in the second degree shall be imprisoned for life, a fixed penalty, such statute must give way to Sections 5143.23 and 5143.05, Revised Code, which provide that all female persons over 16 years of age convicted of felony, except murder in the first degree without recommendation of mercy, shall be sentenced to the reformatory and that courts imposing sentences to reformatory shall make them general and not fixed or limited in their duration.''

See, also, *Ex Parte Thorpe* (1940), 137 Ohio St., 325, approved and followed in *In re Smith* (1954), 162 Ohio St., 58.

It is also not correct to treat the increased penalty in a fourth conviction case as a new and separate offense as was done here.

As heretofore pointed out, the following language appeared in the verdict form signed by the foreman of the petit jury.

"We, the jury in this case, find the defendant John W. Shank guilty of habitual criminal as he stands charged in the indictment."

The proper finding appropriate in this case would have been guilty of fourth conviction under Section 2961.12, *supra*. For cases holding that Section 4131 of the General Code (Section 753.07, Revised Code) providing a heavier penalty upon conviction of the fourth misdemeanor does not create a new offense but simply authorizes more severe penalty for the latest offense, see *State* v. *Stewart* (1945), 79 Ohio App., 340, and *In re Moreno* (1948), 83 Ohio App., 54.

The judgment of the court below must, therefore, be reversed, vacated and set aside, and the cause is remanded for further proceedings in accordance with law.

*Judgment reversed.*

DUFFEY, P. J., and DUFFY, J., concur.