### GROUNDS FOR GRANTING A CHANGE OF VENUE.

Common Pleas Court of Coshocton County.

THE STATE OF OHIO v. BENJAMIN DICKERSON. *

Decided, December, 1907.

*Criminal Law—Change of Venue—Motion for, Should be Granted, When —Influence on the Public Mind of Inflammatory Articles in the Newspapers—Defendant Entitled to a Jury Free from any Settled Belief with Reference to his Guilt—Sections 7263, 7264 and 7265.*

1. While it is the rule that one is qualified to sit as a juror in a criminal case who states that, notwithstanding an opinion he has formed as to the guilt of the defendant, he believes he can lay that opinion aside and render a fair and impartial verdict based alone on the evidence and charge of the court, it is nevertheless the duty of a court to secure as jurors men who do not entertain a settled belief as to either the guilt or innocence of the defendant.

2. If it appears from the evidence, offered in support of a motion for a change of venue, that it is improbable the defendant can secure a fair and impartial trial or an unbiased or unprejudiced jury in the county of his residence, it is the duty of the court to order a change of venue. *State* v. *Elliott*, 25 Law Bulletin, 366, doubted.

*Joseph L. McDowell,* Prosecuting Attorney, Coshocton County, Ohio; *James Glenn* and *T. H. Wheeler,* for the State of Ohio.

*J. C. Adams* and *J. C. Daugherty,* for defendant.

WICKHAM, J. (orally).

The defendant has filed a motion, under Section 7263, for a change of venue. Section 7263 reads as follows:

"All criminal cases shall be tried in the county where the offense was committed, unless it appear to the court, by affidavits, that a fair and impartial trial can not be had therein; in which case the court shall direct that the person accused be tried in some adjoining county."

---

* Error not prosecuted; for opinion on plea in bar, see 7 N. P.—N. S., 208,

The purpose of the inquiry in such cases is to determine whether a fair and impartial trial of the defendant can be had in the county in which the crime is alleged to have been committed. By that we understand, a trial by an unbiased jury; a jury that goes into the jury-box without prejudice or bias. That is what it means.

Counsel have referred to a case decided by Judge Pugh, in Franklin County, some years ago—the case of *State* v. *Elliott,* 25 'Law Bulletin, 366. The first paragraph of the syllabus is:

"1. To authorize a change of venue in a criminal case, on the motion of the defendant, he must prove by clear, explicit and convincing evidence that a fair and impartial trial in the county where the indictment was found can not be obtained."

With all due respect for the opinion of Judge Pugh, we have some doubt about that being a correct proposition of law. That would amount to little short of evidence beyond a reasonable doubt, if any short of that—"by clear, explicit and convincing evidence, that a fair and impartial trial in the county where the indictment was found, can not be obtained."

The second paragraph of the syllabus reads:

"2. Newspaper denunciations of the defendant and of his alleged crime are not alone sufficient 'to warrant a change of venue."

"3. It is no abuse, but may be a wise exercise of the discretion conferred by the statute, for the court to postpone or overrule, for the time being, the motion till it is ascertained by an examination of jurors whether a constitutional trial can be had."

That does not concern us in this case. It appears from a note at foot of page 253 that this opinion was approved by the Supreme Court. As an authority, it is somewhat crippled from the fact that Judges Bradbury and Minshall dissented from the judgment of the court. So, it appears that three of the members of the Supreme Court approved the opinion, and two disproved it.

Our understanding is, that if it appears from the evidence offered in support of the motion to be improbable that the de-

fendant can secure a fair and impartial trial, or an unbiased and unprejudiced jury—if it should so appear—then I think it would be the duty of the court to order a change of venue.

I might say that I came here today with the impression that the state of the public mind of this county is against the defendant; I was here on a former occasion, which counsel remember, and I think I received an impression at that time to that effect, probably from what was said by the county commissioners at their session, which we all attended; but, from the evidence which has been offered here, we must determine the matter; and I think the court is capable of taking the evidence offered at this hearing, without being biased by any impression received heretofore, and determine this question.

It appears from the affidavits filed by defendant's counsel that the press of this county at the time, before and since the former trial, published a great many articles that were very damaging to the right of the defendant to a fair and impartial trial. We must assume that the people read the newspapers, and we also have a right to presume that the reports published by the newspapers made some impression upon the people who read them. There is no doubt about that. Every-day experience teaches us that.

Judge Pugh says, in his opinion, which we may regard as an authority here, that newspaper denunciations of the defendant alone will not afford sufficient ground for a change of venue. But we should go further, and inquire as to what effect the newspaper articles published in this city had upon the public in this county. The circulation of the papers, it appears, was very large. Then we come to the testimony of the witnesses called. In some of the affidavits filed by the state it is stated that the spectators at the former trial were quiet and decorous, orderly and well-behaved, and in the same affidavit it is stated that the court frequently cautioned the audience.

I have been on the common pleas bench in all about six years, and have presided at some cases where we had very large audiences—a couple of murder cases, and some other cases that were of interest to the people where they were tried, and they attracted

large audiences; and I do not know that it was ever my experience that the court was called upon to admonish a quiet, decorous and orderly audience. So, it would seem, from the statements in the affidavits themselves, that there was some reason for the court's admonition to the audience, and that if they had been quiet and orderly, there would have been no occasion for the court to admonish or caution them. But, however that may be, we do not think that is a matter that is very material.

Now these witnesses who testified—some of them speak directly as to the matter; take the testimony of the county commissioners who testified; one of them is the same man who made a statement at my former visit, a few days ago, and his statement is that ninety per cent. of the people in the county believe the defendant to be guilty; that they have a settled conviction or belief that the defendant is guilty of the crime with which he stands charged. I do not know of anybody who would be more capable of judging than the county commissioners. Their duties call them to all parts of the county; they go out and talk to the people; they come in contact with them; they know what the people are talking about; what they are saying, better, probably, than any other public officer of the county; and so, for that reason, the opinions and statements of the county commissioners are probably entitled to more weight than the opinions of most other men.

Now, if it is so that ninety per cent. of the people of the county have settled opinion or belief that the defendant is guilty, how is it possible, I will not put it that strong, but is it probable, that an unbiased jury could be obtained to try the case? It is not, as some of the witnesses seem to think, whether there is a possibility of finding twelve men who would be unbiased and unprejudiced. It is not that; but is it probable, by the usual mode of securing a jury in the trial of a murder case, to get a jury who had not formed or expressed a settled opinion as to the guilt of the defendant? It appears to the court, from the testimony of the witnesses, that it would be altogether improbable.

As to the opinions of the witnesses, expressed by the persons who made the affidavits, they are no doubt honest in their

opinions, and they say that they think that the defendant could have a fair and impartial trial. They go so far as to say orally that they think, if a person were called, no matter how firm a belief he had before of the guilt of the defendant, that he could lay it all aside and, from the evidence alone, render a fair and impartial verdict. Well that is possible, but hardly probable; and to be compelled to call such men to sit in judgment is not what the law contemplates. The Supreme Court says that if a man says that he has formed an opinion, yet, notwithstanding that, if he says that he can lay his opinion previously formed aside and render a fair and impartial verdict from the evidence, and that alone, he is competent to sit in the cause; but, in the trial of a criminal case, and in the administration of criminal law, it ought to be the duty of the court to secure a jury that has not a settled belief or opinion one way or the other. of the guilt or innocence of the defendant. I do not regard the opinions of these men, as disclosed by the affidavits, without stating any facts to base them on, as of very great weight; and when counsel for the defendant came to interrogate them upon what they predicated their opinions, it appears that they have gone into or approached the domain of metaphysics to some extent, and they say that they think, after examining their own mind, that they could lay aside the conviction previously formed and could render a fair and impartial verdict from the evidence alone.

Our conclusion is, that it is only justice to the defendant that the motion should be granted, and a change of venue ordered. It is no insult to the people of Coshocton county, as counsel has suggested in argument. If that is so, there would be an insult to the citizens of every county in which a change of venue was had, and it would be an insult for the Legislature to pass an act authorizing a change of venue. Counsel are mistaken about that. There is no reflection upon the people of this county. The evidence shows that this case has been talked about to that extent in this county, that it would be very difficult at least to secure an unbiased jury in the county. I live in a county somewhat smaller in population—26,000. Coshocton county has

about 28,000 people; it is about the size of this county, and we know to what extent a case of this character would be talked about by the people of the community. There is hardly a man, or woman or child in the community who would not talk about it, and discuss every detail of it, if the evidence on the trial had been published in the newspapers, and circulated widely.

Motion for change of venue granted, and change of venue ordered to Holmes county. It will be the duty of the clerk, under Section 7265, to at once issue a warrant to the sheriff to transfer the prisoner to Holmes county.