SOUTH EUCLID (CITY), PLAINTIFF, v. FLORIAN, DEFENDANT.

South Euclid Municipal Court, Cuyahoga County.

No. 5152.   Decided September 4, 1963.

*Mr. John L. Angelotta,* prosecutor, for the City of South Euclid.

*Mr. Marvin H. Hersh* and *Mr. Abraham L. Adelstein,* for defendant.

### THE FACTS

KLEIN, J.   The defendant, Jessie M. Florian, was found

guilty by a jury of twelve in the South Euclid Municipal Court. Thereafter, a motion for a new trial was granted. This verdict of guilty was published in the Sun Messenger a newspaper extensively circulated in the City of South Euclid. Furthermore, because of the rarity of this type of offense occurring in an upper middle class community such as South Euclid, the case and verdict were a matter of "common gossip" throughout the city.

## THE LAW

Defense counsels' motion for change of venue is two-pronged. First it contends that it would not be possible for this defendant to get a fair and impartial jury in the South Euclid Court, and, secondly, that the trial should be presided over by a judge other than by the one who previously heard the case and granted a motion for a new trial. (The Municipal Court of South Euclid is a one judge court.)

The prosecutor, on the other hand, contends that the case received little notoriety and publicity, and he further argues as follows:

"In any event, the presentation of evidence of wide spread publicity by newspapers, radio and television about a case without distortion of facts standing alone would not justify an order to move the trial elsewhere and the cases of *State* v. *Sheppard*, 100 Ohio App., 345, 128 N. E. (2d), 472, affirmed 165 Ohio St., 293, 135 N. E. (2d), 340, and *State* v. *Tannyhill*, 101 Ohio App., 466, 140 N. E. (2d), 332, appeal dismissed 165 Ohio St., 482, clearly support this principle."

It is the further contention of the prosecutor that if the defendant believes the trial judge is prejudiced then an affidavit of prejudice should have been filed; that a jury not the trial judge rendered the verdict in this case; and that there is nothing unusual in a trial judge hearing a case a second time.

The Court has carefully analyzed the excellent brief prepared by the prosecutor, and has read all the cases relied on therein. However, it must be stated at the outset, that although the authorities cited by the prosecutor all deal with the general subject of granting a motion to change venue, none of them deal with the precise problem before this Court. To be specific, each of these cases deals with the question of whether a trial

judge should grant a motion to change venue at the outset of a criminal trial when the particular case has received wide-spread publicity. However, the issue raised by the motion to change venue in this case is a "horse of a different color." The question raised by this motion is whether a single judge court in a small residential community of approximately 28,000 people should grant a change of venue when a jury sitting in that court *previously found the defendant guilty of the same offense* and when the finding of guilty was published in the local newspapers and was a topic of interest and discussion in the community.

It is also important to realize that all the cases cited by the prosecutor involve the question of whether or not an appellate court should reverse a conviction because the trial court abused its discretion in refusing to grant a motion for change of venue. Since it is the law of this state that the matter of a change of venue is wholly within the discretion of the trial judge *Richards* v. *State*, 183 N. E., 36, 43 Ohio App., 212, 11 O. C., 714, 36 Ohio Law Reporter, 464; *Hawkins* v. *State*, 161 N. E., 284, 27 Ohio App., 297; *Johnson* v. *State*, 6 Ohio Law Abs., 707; *State* v. *Stemen*, 106 N. E. (2d)), 662; *Weber* v. *State*, 5 Ohio Law Abs., 275; *State* v. *Smith*, 24 Ohio Dec., 476, 16 Ohio N. P. N. S., 535; *State* v. *Sheppard*, 165 Ohio St., 293, 135 N. E. (2d), 340 (1956); *State* v. *Tannyhill*, 101 Ohio App., 466, 140 N. E. (2d), 332 (1956), an appellate court is reluctant to substitute its judgment for that of a trial court. The issue before this Court is not what an appellate court would do if the judge in the exercise of his discretion overruled this motion, but rather, the issue is whether, in the exercise of this Court's discretion, this motion should be granted considering the publicity given the jury verdict, considering the general interest in the community (because of the unusual nature of the charge) and considering what transpired in the earlier trial of this case. (The trial of this case was fraught with such a multitude of problems from its very inception that it would be impossible to enumerate them in this opinion. The Court was required to make a very large number of rulings to cope with these unexpected, unpredictable, and unusual situations. These rulings resulted in defense counsel developing a rather intense belief that the Court was favoring the prosecution and was prejudiced toward the defendant and her counsel.)

Perhaps if this Court denied defendant's motion for change of venue, the Court of Appeals of this County would not reverse such a ruling since the record in this case might not disclose a clear-cut abuse of the judge's discretion as a matter of law. But again, the question before this Court is not what an appellate court would do if the motion was denied (this being the issue in all the cases relied on by the prosecutor), but rather, how should this Court rule in the first instant in the exercise of its own discretion. In 22 C. J. S., Criminal Law, Sec. 196, Pg. 514, certain principles to be considered in ruling on a motion to change venue are stated as follows:

"The question to be determined on a motion for change of venue grounded on local prejudice is whether or not *there is a reasonable ground for fear* that the alleged prejudice actually exists and that accused will not receive a fair trial—" (Emphasis added.)

Syllabus 2 in *State* v. *Dickerson*, 7 Ohio Nisi Prius (N. S.), 193, states as follows:

"If it appears from the evidence, offered in support of a motion for a change of venue, that it is improbable the defendant can secure a fair and impartial trial *or an unbiased or unprejudiced jury* in the County of his residence, *it is the duty of the Court to order a change of venue.*" (Emphasis added.)

In granting the motion to change venue in *State* v. *Dickerson, supra,* Judge Wickham referred to the fact that the community involved was one of approximately 28,000 people, inferring that the smallness thereof magnified the need for granting the motion. It is important to note that in the 1960 census the South Euclid population was 27,500, slightly less than the community involved in the *Dickerson case.*

This Court was also impressed with the decision in *State* v. *Williams*, 171 A. (2d), 137, 67 N. J. Super., 599 (1961). On Page 139 of its decision, the Court stated as follows:

"In the spirit of individual liberty our courts must be vigilant in order to adequately safeguard the rights of every defendant. It appears to this court that the venue in the instant case should be laid in another county because of the extensive attention which the proceedings in this matter have received; particularly the attention addressed to the prior plea of "non vult" makes it highly probable that the defendant could not

receive a fair and impartial trial in Middlesex County. It is to the credit of our system of justice that a prospective juror candidly admitted at the prior trial that he knew of the plea of "non vult" to second degree murder. *If such knowledge were not revealed at a subsequent trial, the defendant would be grossly prejudiced. In the interest of justice it is the duty of this court not to expose this defendant to the risk contingent upon a trial in this county.* Defendant's motion for change of venue will be granted—" (Emphasis added.)

It will be noted from the above that the court laid great emphasis on the fact that the newspapers carried an account of the defendant's plea of "non vult" which they apparently equated to a plea of guilty. The court laid far greater significance on the publicity given this plea than it did to the widespread publicity given to the arrest of the defendant. It is the opinion of the Court in the instant case that the publicity given to the jury verdict of guilty is of far greater importance than the publicity given the original arrest of the defendant. It is understood in this country that a defendant is innocent until proven guilty; therefore, mere knowledge that a crime has been committed and that a certain person was arrested by the police does not establish this person's guilt. However, when it is known by a juror that another jury has already found the defendant guilty of this particular crime, such a juror could hardly be considered to be without prejudice. If he is not consciously prejudiced, the probabilities are very great that he would be subconsciously prejudiced. If but one of the twelve jurors called for the next trial failed to reveal his knowledge of the prior jury verdict of guilty, or if but one juror during the course of the trial had his memory jarred so as to realize that this was a re-trial of a case about which he had previously heard or read of a guilty verdict, the defendant would be greatly prejudiced. Considering that the City of South Euclid is a relatively small community of approximately 28,000 people, that a jury of twelve of its citizens have already found this defendant guilty of this crime, that the original apprehension of the defendant by the police and her subsequent conviction was publicized in the Sun Messenger, a newspaper extensively circulated in South Euclid, that the arrest and conviction of this defendant, because it was a very unusual offense for an upper

middle class community of this type, was a matter of wide-spread comment throughout the city; it must be concluded that there is reasonable ground for fear that the defendant might not receive a fair trial in the South Euclid Court. Considering further the multitude of problems which arose in the prior trial of this case, considering defense counsels' belief that the trial judge was prejudiced against the defendant, and considering that the South Euclid Municipal Court is a one judge court and this judge has already presided over a trial of this defendant and granted a new trial; it is the opinion of this Court that in the exercise of a sound judgment, this defendant should not be tried a second time for the same offense in the South Euclid Municipal Court. Furthermore, considering defense counsels' belief that the trial judge is prejudiced, this Court is not desirous of subjecting this same defense counsel to another trial before this same judge. If this case were in the Court of Common Pleas, it would be a simple matter to set the second trial before another judge, thereby enabling the defendant and his counsel to a trial presided over by another judge. But South Euclid is a one judge court and this solution is not available here. The *Gold case* relied on by the prosecutor contains nothing to alter the above conclusion since it was not a situation where the trial judge granted a new trial because of error in the record, but rather, it was a situation where a jury had to be dismissed before a verdict was rendered. Two entirely different situations.

There are already too many places in the world where human rights are being denied. Under our American System of Government, it is the obligation of the judiciary to be ever vigilant in order to guarantee an accused a fair and impartial trial. If there be any doubt, it should be resolved in favor of the accused.

So as not to expose this defendant to the risk contingent upon another trial in the City of South Euclid, it is the opinion of this Court that the trial of this case should be transferred to a Municipal Court in this county not included within the area in which the Sun Messenger Newspaper is circulated.

The Motion to Change Venue is granted.